Anthony GRANDISON

v.

Thomas CORCORAN, Warden J. Joseph Curran, Attorney General
of the State of Maryland.

No. S 99–937.

United States District Court,
D. Maryland.

Jan. 6, 2000.

Mary E. Davis, Davis and Davis, Christopher M. Davis, Davis and Davis, Washington, DC, for Anthony Grandison, petitioners.

Anthony Grandison, Baltimore, MD, pro se.

Annabelle L. Lisic, Office of the Attorney General, J. Joseph Curran, Jr., Office of the Attorney General, Baltimore, MD, for Thomas Corcoran, Warden of the Maryland Correctional Adjustment Center and the Maryland Penitentiary, J. Joseph Curran, Attorney General of the State of Maryland, respondents.

*MEMORANDUM OPINION*

SMALKIN, District Judge.

Anthony Grandison is a prisoner of the State of Maryland, under a sentence of death arising out of his conviction of the murder for hire of two individuals who, he thought, were to be witnesses against him in a federal criminal prosecution. The evidence at his trial showed that he hired a Mr. Evans to actually carry out the mur-

ders of David Scott Piechowicz and Cheryl Piechowicz. (The intended female victim, Cheryl Piechowicz, was not working with her husband on the date of the murders, so Susan Kennedy, substituting for her, was killed in her stead.)

Mr. Grandison's trial on the merits, his sentencing, and his resentencing have generated a substantial body of reported and unreported case law. The latest major opinion is *Grandison v. State (Grandison III)*, 341 Md. 175, 670 A.2d 398 (1995), *cert. denied*, 519 U.S. 1027, 117 S.Ct. 581, 136 L.Ed.2d 512 (1996), in which a full discussion of the facts and of the prior judicial treatments of Mr. Grandison's case can be found. For the present, it is sufficient to note that Mr. Grandison has filed a federal habeas corpus petition, attacking the resentencing phase and guilt-innocence phase of his trial, as well as various appellate proceedings. The present petition, filed April 5, 1999, by counsel, is 83 pages long. It raises a total of 31 contentions. He has also filed, *pro se,* two supplements, asserting additional contentions, as well as a number of ancillary filings and letters. The respondents have answered, with relevant transcripts and opinions, and the petitioner has submitted a comprehensive reply. No oral hearing is needed in this Court.

Before proceeding to the merits, the Court will establish the standard of review to be employed in this case. In that the present petition was filed after April 24, 1996, it is to be decided under Chapter 153 of Title 28 of the United States Code, as amended by the so-called Anti–Terrorism and Effective Death Penalty Act (the AEDPA). *Brown v. Angelone,* 150 F.3d 370 (4th Cir.1998). The AEDPA made a number of substantial amendments to prior habeas corpus law dealing with review of state convictions under 28 U.S.C. § 2254. The federal courts no longer have a roving commission to discern and "correct" error in state court proceedings, but must exercise a more limited review, as prescribed in 28 U.S.C. § 2254(d)(1)

and (2), as amended. The statute now provides that the federal court cannot grant habeas corpus relief to a person in state custody on any claim that was adjudicated on the merits in a state court proceeding unless the adjudication either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, *or* (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. section 2254(d). This statutory standard applies, *inter alia,* to the Sixth Amendment ineffective-assistance-of-counsel claims that frequently predominate in federal habeas corpus cases. *See, e.g., Henderson v. Frank,* 155 F.3d 159, 163 (3d Cir.1998). Furthermore, where the state court has made a finding of fact, that finding is entitled to a presumption of correctness, which can only be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Fourth Circuit has had occasion to interpret and apply amended Section 2254(d) in several cases, principally *Green v. French,* 143 F.3d 865 (4th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 844, 142 L.Ed.2d 698 (1999). Explicating the "unreasonable application" language of Section 2254(d)(1), the Fourth Circuit held that that test is satisfied only where no reasonable jurist could determine an issue of law the way the state court did. *Green,* 143 F.3d at 870–71. The Court is aware that the Supreme Court has granted *certiorari* in a Fourth Circuit case that applies the *Green* test just cited, *i.e., Williams v. Taylor,* 163 F.3d 860 (4th Cir.1998), *cert. granted,* —— U.S. ——, 119 S.Ct. 1355, 143 L.Ed.2d 516 (1999). Therefore, this Court, having reviewed the pertinent portion of the *certiorari* petition in that case and the authorities cited therein, just to be on the cautious side, will utilize the test adopted by the most liberal Circuit opinion interpreting Section 2254(d)(1), *viz., Matteo v. Superintendent,* 171 F.3d 877 (3d. Cir.)(*en*

banc), cert. denied, —— U.S. ——, 120 S.Ct. 73, 145 L.Ed.2d 62 (1999), where the Third Circuit adopted an "objectively unreasonable" test, saying, "The federal habeas court should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id.* at 889–90. *See also, O'Brien v. Dubois,* 145 F.3d 16, 24–25 (1st Cir. 1998).

Bearing this principle in mind, the Court turns to the petitioner's lead contention, *viz.,* that he was denied effective assistance of counsel in connection with the resentencing hearing.

 Petitioner's argument that he was deprived of the effective assistance of counsel differs from the run-of-the-mill ineffective assistance claim in a highly significant respect. Ordinarily, a court analyzing such a claim applies the familiar test of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to counsel's actual performance at a trial, hearing, or other critical phase of a criminal prosecution. In the present case, Mr. Grandison *fired* all counsel whose performance is under attack prior to the resentencing hearing. Specifically, Mr. Grandison had fired Messrs. Alan Drew and Harry Trainor on August 27, 1993, with leave of court (even though the court found no meritorious reason for him to do so). *Grandison III,* 341 Md. at 199 n. 7, 670 A.2d 398. After petitioner was allowed to fire Messrs. Drew and Trainor, Messrs. Tuminelli and Purpura were assigned to represent him. *Id.* After Grandison had expressed dissatisfaction with the services of Tuminelli and Purpura because they wished to pursue a line of defense to the death penalty that Grandison did not agree with, Grandison asked for yet a new assignment of counsel only a week prior to the resentencing. When the trial court refused to assign new counsel, Mr. Grandison refused either to proceed with Tuminelli and Purpura or to represent himself.

This resulted in a finding by the resentencing court that Grandison had waived his right to counsel (although Tuminelli was appointed as stand-by counsel), and that Grandison "had chosen, by default, to represent himself." *Grandison III,* 341 Md. at 199–200, 670 A.2d 398.

Mr. Grandison was no stranger to representing himself. As the Court of Appeals noted in *Grandison III,* 341 Md. at 200, n. 9, 670 A.2d 398, Mr. Grandison had represented himself at his trial in the present case and at his federal criminal trials.

At first blush, it is difficult to understand how an attorney who has been fired can be charged with *Strickland* incompetence. The petitioner's argument that an attorney can be so charged is premised on the case of *United States v. Fessel,* 531 F.2d 1275 (5th Cir.1976). In that case, a criminal defendant with a history of psychiatric treatment and of having once actually been found incompetent to stand trial, specifically requested his court-appointed counsel to prepare an insanity defense. After the trial began, Fessel asserted his right to self-representation. The trial court allowed counsel to withdraw, but denied Fessel a continuance. Among other things, the Fifth Circuit held on appeal that counsel had a duty in preparation for trial to pursue an insanity defense, and to seek the appointment of a psychiatric expert under the federal Criminal Justice Act (CJA). The court held that, under the facts in Fessel's case, where the *only* issue to be decided was the defendant's sanity, it was obvious that counsel should have utilized the provision of the CJA to procure psychiatric testimony in aid of that defense. *Fessel,* 531 F.2d at 1279.

This case does not even begin to present circumstances *close* to that in *Fessel.* There is no indication at all here that Mr. Grandison wished to pursue an insanity defense or even to present evidence that his mental status in any way constituted a mitigating factor against the death penalty. Furthermore, there is no indication at all that counsel should have independently

pursued a mental-status line of defense or mitigation as to the death penalty. Mr. Purpura, before he was let go, had made an informed and intelligent decision not to pursue a mental health strategy at sentencing, having been informed by Mr. Dantes (another of Grandison's prior attorneys) that petitioner would not allow it, and having also made the tactical judgment that the line of defense that he planned to assert at the resentencing hearing (related to the question of whether Grandison actually ordered the killings), was the best alternative available to him.

Unlike the situation in *Fessel*, where counsel was discharged during the trial, Mr. Grandison rejected counsel more than a week prior to the commencement of his resentencing. It is impossible to know what information concerning Mr. Grandison's mental background could have been developed in the gap between the discharge of counsel whose services are now under attack and the actual conduct of the resentencing hearing, or whether, had counsel stayed in the case, they would have decided—*and* been allowed by Mr. Grandison—to pursue the issue. It would involve this Court in totally unwarranted speculation to say that counsel were ineffective in the *Strickland* sense in this case, given that Mr. Grandison fired them before they had a chance actually to participate in the proceedings. Thus, this case is very much unlike *Fessel*, where counsel actually began the trial without any hope of presenting an adequate defense. Furthermore, Mr. Grandison obviously knew most of the evidence about his own background and mental status, particularly the hit-on-the-head that he claims should have been investigated, and his drug abuse. As the record demonstrates, Mr. Grandison is an excellent writer and a prolific *pro se* litigant who has immersed himself in the study and *pro se* practice of the law. A catalog of some of his litigative efforts in this Court follows:

Grandison v. Cummings, Civ. No. S 99–959

Grandison v. State Public Defender, Civ. No. S 99–837

Grandison v. United States, Civ. No. S 98–2928

Grandison v. U.S. Parole Commission, Civ. No. S 98–803

Grandison v. Dept. of Justice, Civ. No. S 97–2420

Grandison v. Baker, Civ. No. S 97–1396

Grandison v. United States, Civ. No. H 97–1359

Grandison v. United States, Civ. No. S 97–1303

Grandison v. United States, Civ. No. S 97–1297

Oken & Grandison v. Nuth, Civ. WMN 96–2923

Grandison v. Abbas, Civ. No. B 94–2409

Grandison v. Smith, Civ. No. B 94–1150

Grandison v. Smith, Civ. No. B 94–870

Grandison v. Smith, Civ. No. B 94–226

Grandison v. Lanham, Civ. No. B 94–204

Grandison v. Smith, Civ. No. B 93–494

Grandison v. State, Civ. No. B 92–2312

Grandison v. Attorney General, Civ. No. B 92–19

Grandison v. Attorney General, Civ. No. B 89–770

Grandison v. United States, Civ. No. HM 88–9

Grandison v. Warden, Civ. No. PVN 87–1270

Robinson–Bey & Grandison v. Robinson, Civ. No. K 89–548

Calhoun–El & Grandison v. Robinson, Civ. No. 89–547

Review of the records in these cases would show that Mr. Grandison, although he might have been hit on the head as a youth, is an intelligent man, well able to express himself in writing, both in general and in legal terms. In fact, as the Court of Appeals noted in *Grandison III*, Mr. Grandison had spent a considerable period of time "poring over transcripts of the initial sentencing hearing and the applicable law" between 1983 and 1994. *Grandi-*

*son III*, 341 Md. at 234, 670 A.2d 398. The element of surprise that overtook Mr. Fessel certainly does not surface in Grandison's case. Hence, there was not only no professional failing of counsel, but no prejudice in the *Strickland* sense.

The only other case relied upon by the petitioner in support of his contention that discharged counsel's failure to pursue a line of defense can amount to a *Strickland* violation is *Moran v. Godinez*, 57 F.3d 690 (9th Cir.1994), *cert. denied*, 516 U.S. 976, 116 S.Ct. 479, 133 L.Ed.2d 407 (1995), in which the defendant in a state criminal trial discharged his counsel during his rearraignment. (In his habeas case, Moran contended that he had received ineffective assistance of counsel before he discharged him "at his change-of-plea hearing." *Id.* at 699.) Although the Ninth Circuit entertained *Strickland* claims as to counsel's performance, it found all of them meritless. *Id.* at 699–700. *Moran* is certainly no authority for the proposition that, where a defendant discharges his attorney before the commencement of a critical stage of the proceedings, their shortcomings should be scrutinized under the same Sixth Amendment microscope had they actually been given a chance to practice their profession at a proceeding. Petitioner's reply adds no authority to his position on this issue.

In short, this petitioner is not in a position convincingly to argue that the lawyers whom he specifically wanted *not* to represent him were ineffective in the constitutional sense simply because they did not develop and force upon Mr. Grandison a mitigation argument based upon his mental background. As a thorough reading of *Grandison III* and even the present petition will show, Mr. Grandison is an exceptionally steadfast individual when it comes to steering his legal course and he simply cannot satisfy either of the prongs of *Strickland* on this issue. Mr. Grandison certainly could have, representing himself, raised these issues, prior to, in connection with, and/or during the resentencing, but

he did not do so, a failure that can in no way be visited upon the attorneys he fired.

Although a number of other contentions are made regarding the shortcomings of fired counsel (including their failure to convince the Court that Grandison was incompetent to waive counsel or to proceed with the resentencing, their failure to enter into a discovery agreement, and Mr. Tuminelli's alleged failure as "standby counsel" to keep in his possession numerous boxes of discovery material), none of these contentions raises either professional incompetence of the degree required under *Strickland* for collateral relief or the necessary prejudice for collateral relief. The Fourth Circuit has consistently refused to apply a "totality" test—which is the epitome of Monday morning quarterbacking—to Sixth Amendment claims. *See, e.g., Fisher v. Angelone*, 163 F.3d 835, 852–53 (4th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1290, 143 L.Ed.2d 382 (1999)(collecting authorities).

■ The petitioner next contends (Contention II) that he was incompetent to waive counsel in connection with his resentencing hearing. The PCPA (post conviction) court held that the petitioner was in fact competent to waive counsel prior to the resentencing hearing. This issue was fully litigated, and the post conviction court chose to accept testimony of the State's expert witnesses to establish the petitioner's competency in this regard. Those findings are presumptively correct, and petitioner has shown no clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1). The mere fact that he had experts who went the other way does not constitute clear and convincing evidence that the state court's determination was wrong on the facts.

The question next becomes whether the state court's decision was contrary to established Supreme Court law or resulted in an unreasonable determination of the facts in light of the evidence presented. Certainly, the state court did not unreasonably determine the facts by choosing to

accept the State's experts' conclusion as to defendant's competence to knowingly, intelligently, and voluntarily waive his right to be represented by counsel over that of petitioner's experts, Drs. Lavin and Knable. Their investigations into Mr. Grandison's competence were not exhaustive, in that they did not adequately take into account his ability actually to present legal argument and materials and to develop legal strategies, both as evidenced by the materials he had filed and by counsel's assessment of his sophistication in these matters.

Furthermore, although present counsel states that the state courts should have applied the standard of *Godinez v. Moran,* 509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993) rather than *Westbrook v. Arizona,* 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966), *Godinez* does not overrule *Westbrook,* but simply calls for a determination of whether the defendant is competent under the standard of *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), and whether the defendant made a knowing, intelligent, and voluntary waiver under the standard of *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

In this case, the state court's ultimate decision was not contrary to, nor did it involve an unreasonable application of, the clearly established Supreme Court law under the objective standard discussed above and established in the *Johnson –Dusky–Westbrook–Godinez* line of cases. 28 U.S.C. § 2254(d). The findings of the PCPA court fully support an objectively reasonable judicial conclusion that the defendant had sufficient ability to consult with counsel with a reasonable degree of rational understanding, and a rational and factual understanding of what was going on, to render the waiver both voluntary and intelligent. The post conviction court was not obliged to re-examine the entire issue *de novo.* Given that the PCPA courts here properly applied a totality-of-the-circumstances approach, *see Godinez,*

509 U.S. at 401 n. 12, 113 S.Ct. 2680 and *Johnson v. Zerbst, supra,* this Court concludes that the competence issue does not warrant federal habeas corpus relief under Section 2254.

The petitioner's next contention (III) simply asserts that Mr. Grandison was not competent to proceed with the resentencing. Even though Mr. Grandison was chronically unable to work with attorneys, the state courts' decision that he was competent to proceed with the resentencing does not involve an unreasonable application of law or determination of the facts. Hence, under 28 U.S.C. § 2254(d), this claim is not worthy of relief.

■ Petitioner's next contention (IV) is that "false evidence" was presented at the resentencing, specifically referring to testimony by FBI Agent Foley. Although it is true that *false* testimony *knowingly* presented by the State can require federal habeas corpus relief, *see Stockton v. Virginia,* 852 F.2d 740 (4th Cir.1988), *cert. denied,* 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989), there is no evidence at all that the testimony of anyone in this case was perjured or that, even if it was not perjured but only factually incorrect, the prosecutor knowingly made use of false testimony. The Court of Appeals dealt with the general subject of Agent Foley's testimony in *Grandison III,* 341 Md. at 216–20, 670 A.2d 398, but petitioner now contends that "new evidence" has come up to show that the Court of Appeals' decision was based on a false premise. The petitioner is wrong. The so-called false evidence in this case is that Agent Foley told the sentencing jury that "on one prior occasion a witness had been injured against [sic] Mr. Grandison." Given the purpose for which the evidence was offered, *Grandison III,* 341 Md. at 218–20, 670 A.2d 398, and given the utter absence of any evidence that Foley's testimony was perjured or that the prosecution knew it was factually erroneous, the Court finds no violation of Grandison's constitutional rights in connection with its admission.

The petitioner next contends (V) that reference was made in closing argument to a document that was not formally admitted into evidence. Evidentiary questions do not raise federal constitutional issues, unless fundamental fairness or a *specific* federal constitutional right is implicated, which is not the case here. *See Grundler v. North Carolina*, 283 F.2d 798, 802 (4th Cir.1960). Here, there was no objection made to the use of the exhibit, and the prosecutor's reference to it during closing argument was not such that it resulted in a misleading of the jury or deprived the defendant of a fundamentally fair trial. Hence, there is no error of constitutional dimension in either the reference to the exhibit or the prosecutor's argument regarding it. *See Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).

Petitioner's next contention (VI) is a violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Court has carefully reviewed the Maryland courts' resolution of this issue, and it is of the opinion that those courts properly applied *Brady* in analyzing this claim, especially in view of the tremendously broad access that Grandison was allowed to prosecution files. Furthermore, considering the material claimed to have been withheld, in light of the overwhelming evidence against Grandison, the Court is of the opinion that there is utterly no chance that these materials, had they been furnished, were such that they could reasonably be taken to put the whole case in a different light so as to undermine confidence in the outcome. *See, e.g., Strickler v. Greene*, 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). This evidence, as recounted at Resp. Answer Ex. 108 at 56–57, consisted simply of marginal materials that casts no significant shadow over the reliability of the trial and sentencing process in this case, much less enough to satisfy the test set forth in *Strickler*.

The petitioner next contends (VII) that a requested jury instruction should have been given that the jury must find beyond a reasonable doubt that he paid or agreed to pay for the murders and that Vernon Evans actually committed the murders before he could be given the death penalty. Generally, questions of jury instructions are matters of state law, not cognizable on federal habeas review, unless a specific constitutional issue is implicated that calls into question the Due Process Clause. *See Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). *See also, Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). For the reasons stated by the Court of Appeals in *Grandison III*, 341 Md. at 215–16, 670 A.2d 398, Grandison simply was not entitled to the instruction as a matter of state law, nor was he entitled to it as a matter of federal constitutional law. Thus, Contention VII has no merit.

As an adjunct to Contention VII, petitioner asserts, in Contention VIII, that the murder-for-hire aggravating circumstances found in Md. Ann.Code art. 27, section 413(d)(7), is unconstitutionally vague. Petitioner argues that the vagueness arises from the fact that the statute does not require a nexus between the actual agreement and the actual murders. In fact, the statute *does* so require a nexus, because it literally conjoins with a conjunction (*and*) the defendant's act of engaging or employing someone to commit *"the"* murder with the commission of *"the"* murder pursuant to an agreement or contract for remuneration or the promise thereof. *Id.* (Emphasis added). The very text of the statute, in linking the common phrase "the murder" in the first and second clause with the conjunction "and" provides the necessary nexus to cure any vagueness perceived by the petitioner. Furthermore, the state courts' resolution of this issue, *see* Resp. Answer Ex. 108 at 35–37, correctly applies governing Supreme Court law, *e.g., Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), to the claim in question. Thus, there is no ground for

relief under Section 2254(d). Furthermore, the statute, as interpreted, adequately narrows the class of those who are death-eligible, as will be dismissed more fully *post.*

Petitioner next contends (IX) that he was denied effective assistance of any counsel at all at resentencing, thus directly attacking the finding of *Grandison III,* 341 Md. at 199–203, 670 A.2d 398, that Grandison did not have a meritorious reason for discharging his counsel. Having analyzed the relevant holding of the Court of Appeals in *Grandison III,* this Court is of the opinion that the Court of Appeals did not make an unreasonable determination of the facts in light of the evidence and that it properly applied governing federal law in reaching its objectively, legally reasonable conclusion. Hence, relief will be denied under 28 U.S.C. § 2254(d). Embedded within this contention is a sub-contention that petitioner's waiver of counsel was ineffective, thus directly attacking a holding of *Grandison III,* 341 Md. at 203–05, 670 A.2d 398. The finding of the Court of Appeals on this issue is not an unreasonable determination of the facts in light of the record, nor is it contrary to, or involve an unreasonable application of, clearly established federal law, as a reading of that portion of *Grandison III* will attest. Hence, Contention IX has no merit.

■ Petitioner's next contention, presented as Contention X, also sets forth no meritorious claim. Given Grandison's proclivity for changing counsel frequently, it is certainly objectively reasonable to hold on this record that there was no abuse of discretion for a continuance to be denied in this case. This issue was dealt with by the Court of Appeals in *Grandison III,* 341 Md. at 234, 670 A.2d 398, and its resolution of the issue is consonant with federal standards. *See Morris v. Slappy,* 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). Thus, there is no meritorious ground for relief presented. 28 U.S.C. § 2254(d)(1). *Cf. Barham v. Powell,* 895 F.2d 19 (1st

Cir.), *cert. denied,* 495 U.S. 961, 110 S.Ct. 2572, 109 L.Ed.2d 754 (1990).

■ The petitioner next contends (XI) that the Maryland death penalty is imposed in a discriminatory manner by allowing prosecutors in every county unbridled discretion in seeking the death penalty and as a result, the prosecutors have targeted solely male defendants. The petitioner's own brief belies that contention, as women have in fact been "targeted" in a number of cases for the death penalty. *See* petition at 54. Furthermore, in that this claim was not developed with any evidence in the state court proceedings, and in that the petitioner has not shown the necessary predicate to obtain relief on it here, *see, e.g., United States v. Armstrong,* 517 U.S. 456, 465, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996), this Court will not allow the evidence to be developed in the first instance before it. *See* 28 U.S.C. § 2254(e)(2). Finally, the state courts' resolution of the issue was objectively reasonable. *See* Resp. Answer Ex. 108 at 38–39.

The petitioner contends in Contention XII that the imposition of the death penalty in his case was "inappropriate." He advances no legal authority to support this contention, and it is plainly devoid of merit. Thus it will be denied on the merits. The mere fact that other murderers who face the death penalty have committed more heinous acts does not mean that Mr. Grandison does not deserve that penalty for the cold blooded killing of the victims he targeted for execution, carried out on his orders, and with a promise of payment from him to the shooter.

For Contention XIII, the petitioner claims that evidence of institutional misbehavior occurring after 1984 violated his constitutional rights. This evidence was certainly relevant to his future dangerousness, and it was sufficiently reliable to warrant admission as a matter of both state and federal law. *See Grandison III,* 341 Md. at 237–38, 670 A.2d 398. The state courts' resolution of the issue, *see*

Resp. Answer Ex. 108 at 78–79, was objectively reasonable.

■ For Contention XIV, Grandison claims that the resentencing court erroneously allowed the reading into evidence of former testimony of a witness who appeared at the trial, but had become seriously ill with cancer before the resentencing. Such testimony was admissible as a matter of Maryland law, *see Grandison III*, 341 Md. at 238–39, 670 A.2d 398, and involved absolutely no violation of a constitutional right, in that the admission of prior testimony is a well-recognized exception to the hearsay rule, thus negating any confrontation clause violation. *See* Fed. R.Evid. 804. *See also Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). Certainly, even though the witness' testimony was given as to the guilt-innocence phase, Grandison's motive for attacking it at the resentencing was no different than it was during the guilt-innocence phase, as the testimony went only to the factual premise of whether Evans was the shooter. *Grandison III*, 341 Md. at 238, 670 A.2d 398. Hence, Contention XIV is devoid of merit. *See also Estelle v. McGuire, supra* (errors in admission of evidence without constitutional significance not cognizable).

■ For Contention XV, the petitioner claims that the "murder for hire" aggravating circumstance did not adequately narrow the class of persons upon whom a death penalty sentence can be imposed. This contention is plainly devoid of any merit. *See Lowenfield v. Phelps*, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). It obviously does "meaningfully narrow" the class of persons upon whom a death sentence can be imposed to recognize, as an aggravating factor the especially heinous nature of paying a human being to kill another human being. Not only is it murder, but it is cowardly murder most foul. This issue was dealt with on the merits in *Grandison III*, 341 Md. at 196–98, 670 A.2d 398, in a manner that did not involve an objectively unreasonable application of federal law. Hence, it is not a ground for relief under 28 U.S.C. § 2254(d)(1), and it is devoid of merit. *See Green v. French, supra.*

■ The petitioner next claims (Contention XVI) that there was prosecutorial misconduct in the resentencing hearing. He points to facial expressions of the prosecutor, certain statements she made, her closing argument, references to matters allegedly not in evidence during the argument, and the like. Upon this Court's independent review, applying the test in *United States v. Harrison*, 716 F.2d 1050 (4th Cir.1983), *cert. denied*, 466 U.S. 972, 104 S.Ct. 2345, 80 L.Ed.2d 819 (1984), it is obvious that the prosecutor's actions as complained of here did not deprive the defendant of a fundamentally fair proceeding, *see Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986); the state court's like conclusion, Resp. Ex. 108, *passim*, is objectively reasonable. Thus, Contention XVI fails.

For his next contention (XVII), petitioner claims that the aggravating factor of murder-for-hire was not proved. He is wrong. The Court of Appeals thoroughly analyzed this issue, *Grandison III*, 341 Md. at 246–48, 670 A.2d 398, and its analysis involved an objectively reasonable application of the federal standard, *see Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and is not otherwise subject to attack under 28 U.S.C. § 2254(d). Contention XVII is, therefore, meritless.

In Contention XVIII, petitioner claims that a number of his constitutional rights were violated by "overly extensive security." Given the nature of the defendant, the crimes of which he had been convicted, and the nature of the resentencing proceedings, there was no violation of his constitutional rights. The presence of a large number of security officers, under all these circumstances, did not constitute any federal constitutional violation. *See United States v. Grandison*, 780 F.2d 425 (4th

Cir.1985), *vacated on other grounds,* 479 U.S. 1075, 107 S.Ct. 1269, 94 L.Ed.2d 130 (1987)(discretion of trial court over security matters).

■■■ The petitioner complains, as part of Contention XVIII, that the post conviction court improperly refused to hear evidence from two jurors as to the security level. (Of course, to the extent that this is a claim of constitutional error on the part of the PCPA court, it is not cognizable as such under the rule in *Bryant v. Maryland,* 848 F.2d 492 (4th Cir.1988).) Even if such testimony were to be considered as going to "extraneous matters," and thus not barred by Maryland Rule 5–606 or Fed.R.Evid. 606, this Court has considered the proffers made at the PCPA hearing, in Resp. Ex. 106 at 4, and finds that, even if accepted as true, the proffers do not warrant relief for petitioner or require that the issue had to have been raised on appeal under *Strickland* (assuming appellate counsel had any reason to know of the matters proffered). In particular, it was proffered that one juror would have said he was, at some unidentified point, "nervous" because of the high level of security, and that he asked someone (whom petitioner's PCPA (and present) counsel believed was a state trooper) why "they" were there, to which the individual replied, "Just in case." The second juror would have stated she thought it was "unusual to have all the men with ear phones sitting there." These proffers show this Court that there is no reasonable possibility, in light of all the circumstances, including the nature of the crime and the defendant's criminal record, as known by the jury, that the verdict was actually affected by the security level or the unidentified person's response to the juror's query. *See United States v. Sanders,* 962 F.2d 660 (7th Cir. 1992), *cited with approval in United States v. Thomas,* No. 97–4164, 1998 WL 390911 (4th Cir.)(unpublished), *cert. denied,* —— U.S. ——, 119 S.Ct. 432, 142 L.Ed.2d 352 (1998). In addition, the PCPA court held that these claims were procedurally barred under Maryland law, and there is an insufficient showing of the dual presence of cause and prejudice on this record to allow it to be reviewed federally, under settled law. *Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Certainly, petitioner cannot claim cause and prejudice simply from his *pro se* status, *see, e.g., McCoy v. Newsome,* 953 F.2d 1252 (11th Cir.), *cert. denied,* 504 U.S. 944, 112 S.Ct. 2283, 119 L.Ed.2d 208 (1992), and his appellate counsel, just as certainly, was not required by the *Strickland* standard to have hired private investigators (as did PCPA counsel) to query individual jurors.

■■■ For Contention XIX, the petitioner claims that there was improper "vouching" by Agent Foley for the credibility of another witness, Charlene Sparrow. This issue was dealt with in *Grandison III,* 341 Md. at 216–21, 670 A.2d 398, where the state courts held that even if the admission of Agent Foley's testimony as to his beliefs on credibility of other witnesses and Grandison's ultimate guilt had been error, it was harmless, in view of the nature of the proceedings and the other evidence of record. This Court's assessment on habeas corpus review is simply whether the error resulted in actual prejudice, *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), which it plainly did not, or whether it infected the fact-finding process in the sense of *Estelle v. McGuire,* which it also did not. Furthermore, the anti-vouching rule is not of constitutional dimension, unless the vouching so invades a jury's determination to deny due process. *See Maurer v. Minnesota Dept. of Corrections,* 32 F.3d 1286, 1289 (8th Cir.1994). Taking into account all of the circumstances, any vouching by Agent Foley plainly was not so destructive to due process as to warrant habeas corpus relief.

■■■ For Contention XX, petitioner claims that he was not allowed to impeach Janet Moore with a portion of the defense that was presented in the federal proceeding where she was tried for conspiracy to

violate the civil rights of Mr. and Mrs. Piechowicz. The allegedly impeaching material was the testimony, not of Moore, but of her niece. Such testimony was not admissible under Maryland's (and most jurisdictions') hearsay rule, given that there was no showing that the person giving the former testimony (Moore's niece) was unavailable. *See* Md. Rule 5–804(a). *Cf.* Fed.R.Evid. 804(a). There was no error in the state court's determination that, in that the defense testimony was not presented through Moore herself, it was not a proper subject upon which to impeach her at the resentencing. There simply is no authority supporting, as a constitutional principle, the petitioner's theory that the adoption of a defense by a defendant at trial other than through her own testimony nonetheless opens her up to impeachment under a theory of adoption. The state courts' resolution of the issue, *see Grandison III*, 341 Md. at 240–42, 670 A.2d 398, was not objectively unreasonable in light of federal law, nor does this issue constitute a cognizable evidentiary error. *Estelle v. McGuire, supra.* Thus, Contention XX will be denied, as meritless.

■ Petitioner, in Contention XXI, turns his attention to the perceived deficiencies of counsel who presented his resentencing appeal in *Grandison III*. First, he claims that counsel should have raised the issue regarding Exhibit 21, the letter that allegedly was never formally moved into evidence. *Strickland* did not require the argument to be pressed as a matter of reasonable appellate representation, as there was no error in connection with the exhibit of a prejudicial nature, and petitioner's failure to make the proper objections below would have resulted in the error not being preserved for appellate review as a matter of Maryland law anyway. *Grandison III*, 341 Md. at 221, 670 A.2d 398. Given that appellate counsel in *Grandison III* raised a huge host of other issues, and Grandison *pro se* raised eleven more, which appellate counsel expressly adopted, *see Grandison III*, 341 Md. at 195

n. 3, 670 A.2d 398, appellate counsel's actions in this regard certainly cannot be faulted under the Sixth Amendment. Counsel on appeal is not obliged to raise every conceivable non-frivolous claim. *See Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *Smith v. South Carolina*, 882 F.2d 895 (4th Cir. 1989), *cert. denied*, 493 U.S. 1046, 110 S.Ct. 843, 107 L.Ed.2d 838 (1990).

■ Appellate counsel is also faulted for a host of other alleged professional shortcomings. Counsel is faulted for failure to obtain "documentation to prove on appeal that the State knowingly presented false testimony from Agent Foley." Petitioner mischaracterizes the role of the appellate attorney, which is not to generate a record, but to present to the appellate court arguments based on the record that was made in the proceedings below. In this case, counsel's effort resulted in well over twenty issues being presented for decision in *Grandison III*. *Strickland* does not oblige appellate counsel to make the further investigation which, it is now contended, he should have made. Furthermore, there is no showing of prejudice under *Strickland*, in that, for reasons already stated, the Foley testimony was not knowingly presented as false testimony. Another fault assigned to appellate counsel in *Grandison III* was failure to raise the issue of competency to waive counsel and to proceed with resentencing. Again, as the cases cited previously hold, counsel is not required to raise every issue, even if it is meritorious or potentially meritorious. Counsel is also faulted for not having raised on appeal issues of the constitutionality of the imposition of the death penalty on Grandison based on race and gender discrimination, and that the murder for hire aggravating factor is unconstitutionally vague. Counsel on appeal did in fact raise the race discrimination claim, *see Grandison III*, 341 Md. at 254, 670 A.2d 398, and the other claims are so devoid of merit as not to have been required by *Strickland* to have been raised at all. As

the final prong of his attack on appellate counsel's representation, petitioner argues that appellate counsel should have reviewed and investigated certain documents to determine why they were not provided in discovery, and that he should have argued all instances of prosecutorial misconduct that are now cataloged. Once again, given the many more substantial issues that were pressed on appeal, appellate counsel in *Grandison III* did not violate his *Strickland* obligation, as recognized in *Jones* and *Smith*, both *supra*.

For his next series of allegations, petitioner turns to errors that allegedly occurred at the guilt-innocence phase of his trial.

■■■ The first such claim is that the state courts erred in not giving an instruction on the doctrine of "transferred intent" as petitioner sought it. The factual premise for the contention is that the intent involved was to kill Cheryl Piechowicz, but not Susan Kennedy, and that defendant could not be found guilty of Susan's murder under Maryland law given that Cheryl Piechowicz was not present at the scene of the murders with Susan Kennedy. The question of what jury instruction is appropriate on a state law issue such as transferred intent is not generally cognizable on federal habeas corpus review. In order for federal habeas corpus relief to be granted, the error with regard to instructions must be fundamental. *Cf. Cupp v. Naughten*, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). Here, it was not. On direct appeal, *Grandison v. State (Grandison II)*, 305 Md. 685, 506 A.2d 580 (1986), the Court of Appeals of Maryland held as a matter of state law that this was a proper case for transferred intent, notwithstanding the physical absence of the original intended victim. *Grandison II*, 305 Md. at 771–72, 506 A.2d 580. There is certainly no constitutional infirmity in this holding. In that the doctrine of transferred intent permits the conviction of a defendant who intends to cause the death of an identified person but, by misadventure, causes the death of another, *see Gladden v. State*, 273 Md. 383, 330 A.2d 176 (1974), a proper jury instruction on transferred intent would have allowed the jury to convict not only despite the physical absence of Piechowicz from the murder scene, but, in that the actual victim was intentionally murdered, whether he intended to kill her or Kennedy. In other words, no instruction to the jury on Maryland's law of transferred intent would have made any difference in the outcome of the trial, in light of the evidence and Maryland law. Thus, there is simply no ground presented for federal habeas relief. *Brecht v. Abrahamson, supra.*

The next contention regarding the guilt-innocence phase relates to the testimony of Mr. James Savage, a former federal prosecutor, regarding the decision date of a certain motion in a federal case. Whether the motion was formally adjudicated April 22 or March 15 is of little consequence, in that the murders occurred after the latest of the two dates. In any event, there is utterly no proof that Mr. Savage's testimony was perjured, rather than simply mistaken, or that the prosecution knowingly used false testimony, or that there is any reasonable likelihood that the Savage testimony could have materially affected the judgment. *See United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

The next contention has to do with *Brady* material at trial, the so-called "unredacted Bannister report." The post conviction court found, as a matter of fact, that the evidence was insufficient to show a violation of *Brady*, in light of open-file discovery provided to defense counsel, and that petitioner has failed to adduce clear and convincing evidence overcoming the presumption of correctness to which that finding is entitled under 28 U.S.C. § 2254(e). In any event, this matter was adjudicated by an objectively reasonable application of *Brady v. Maryland* by the Court of Appeals in *Grandison II*, 305 Md. at 746, 506 A.2d 580. Hence, it will not be

revisited here on the merits. *See* 28 U.S.C. § 2254(d)(1). Furthermore, there is, under the facts of the case, no reasonable probability of a different outcome of the trial with regard to the report in question. *Strickler v. Greene, supra.* The issue, in light of the overall evidence of the killings by Evans, would only have been of marginal value, and it is chimerical in light of the Supreme Court's requirement for a meaningful materiality showing in *Strickler.* Nothing in *Spicer v. Roxbury Corr. Inst.*, 194 F.3d 547 (4th Cir.1999) changes *Strickler's* requirement that *Brady* materiality determinations should turn on whether one's confidence in the outcome of the trial is undermined. In *Spicer,* the panel majority found materiality under the peculiar facts pattern of that case, involving a prisoner "eyewitness" who, testifying under a plea bargain, provided the key testimony against Spicer, saying he had seen Spicer running away from the scene of the crime. The prosecutor neglected to disclose that he had earlier been told by the witness' lawyer that the witness had denied to him having even seen Spicer on the day of the crime. Nothing even remotely like the *Spicer* scenario is present in this case, which involved a wealth of evidence directly inculpating Mr. Grandison.

■ The next contention is that the state prosecution of Mr. Grandison constituted double jeopardy, in that he was also subject to federal prosecution for the same underlying conduct. This issue was adjudicated by the state courts on the merits. *Evans and Grandison v. State (Grandison I)*, 301 Md. 45, 481 A.2d 1135 (1984), *cert. denied,* 470 U.S. 1034, 105 S.Ct. 1411, 84 L.Ed.2d 795 (1985). The State's application of its own double jeopardy rule obviously is not a proper matter for this Court's treatment on habeas corpus review. *Estelle v. McGuire, supra.* The state court, in considering the federal double jeopardy issue in *Grandison I*, 301 Md. at 51–55, 481 A.2d 1135, properly applied clearly established federal law in an objectively reasonable fashion, and, hence,

there is no ground for relief under 28 U.S.C. § 2254(d). Federal constitutional prohibitions against double jeopardy are not invoked when there are successive prosecutions on the same facts by separate sovereigns, which the federal and state governments are considered to be for this purpose. *See Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959), and nothing in the International Covenant on Civil and Political Rights (ICCPR) prevents successive federal-state prosecutions, for the reasons stated in Judge Gonzales' opinion in *United States v. Benitez,* 28 F.Supp.2d 1361, 1364 (S.D.Fla.1998)(discussing Senate's preservation of the *Abbate* doctrine in ratifying the ICCPR).

Petitioner next contends that he was incompetent to waive counsel and proceed to trial at the guilt-innocence phase. He has plainly failed to adduce any evidence to show that he was incompetent at the time of trial or that the issue was brought to the attention of the trial court, and the issue has never been properly preserved for federal habeas corpus review. Thus, no relief will be granted on it.

Petitioner next contends that he was denied a fair and impartial jury, mixing that contention with one concerning the testimony of one I. Theodore Phoebus, which was not taken out of the presence of the jury. This bare allegation, totally unsupported by facts, gives no ground for federal habeas corpus relief.

Petitioner contends that there was error when the Clerk of the Circuit Court testified in front of the jury, which he had challenged on racial composition grounds. The issue was procedurally defaulted by not having been waived on the direct appeal, as the PCPA court held, Resp. Answer Ex. 108 at 53–54, and the petitioner has shown neither cause nor prejudice to excuse the default. Thus, this Court will not entertain it on the merits. *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Murray v. Carrier,*

477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

■ Next, petitioner contends that his trial was improperly removed from one Maryland jurisdiction to another. The fact that the removal might have been authorized by a judge other than the administrative judge of the Maryland Circuit Court to which the case was removed is inconsequential as a matter of federal constitutional law, as errors of state law without federal constitutional dimension do not give rise to grounds for federal habeas corpus relief. *See Estelle v. McGuire, supra.*

Petitioner next contends that appellate counsel in *Grandison II* was ineffective in failing to raise the issues adjudicated by this Court above in connection with the guilt-innocence appeal in *Grandison II.* Review of the record shows that well over fifteen issues were raised and argued in *Grandison II,* and that there was no violation of appellate counsel's *Strickland* duty in *Grandison II* by not raising the issue as discussed above, which, although not necessarily frivolous, are not meritorious. *See Jones v. Barnes, supra.* The state PCPA courts' application of *Strickland* to the performance of counsel on direct appeal, *see* Resp. Answer Ex. 108 at 59–62, was certainly objectively reasonable. Thus, this Court will not disturb it. 28 U.S.C. section 2254(d).

The petitioner, next, turns his attention to the lack of appeal as a matter of right from the denial of post conviction relief in Maryland capital cases. This issue was dealt with by this Court in *Hunt v. Smith,* 856 F.Supp. 251, 255–56 (D.Md.1994), and specifically adjudicated by the Fourth Circuit against petitioner's position in its affirmance of this Court's *Hunt* opinion, found at 57 F.3d 1327, 1336 (4th Cir.1995), *cert. denied,* 516 U.S. 1054, 116 S.Ct. 724, 133 L.Ed.2d 676 (1996). The contention has no more merit in this case than it had in *Hunt.* Thus, relief will be denied upon it.

■ The final contention in Grandison's present petition, as filed by counsel, is that the discretionary review process involving application for leave to appeal to the Court of Appeals in this case was faulty because the PCPA record was not properly transmitted to the Court of Appeals. In that there is no entitlement to review by the Court of Appeals in the first place, as established by *Hunt, supra,* there is no constitutional dimension to this contention, which also falls within the general rubric that errors in connection with post conviction proceedings are not cognizable on federal habeas corpus review. *Bryant v. Maryland,* 848 F.2d 492 (4th Cir.1988).

In addition to the massive petition filed by counsel, Mr. Grandison, on April 22, 1999, filed a 46–page "Supplement [*sic*] Petition for Writ of Habeas Corpus," and, on May 17, 1999, filed a "Second and Final Supplement [*sic*] Petition for Writ of Habeas Corpus," both of which the Court will consider, even though the Rules Governing Section 2254 Cases do not allow any such filing as a matter of course.

The first contention in Mr. Grandison's *pro se* supplement is that the proceedings on resentencing should have been bifurcated "so that the jury would have to find whether the aggravating circumstance was proven [sic] before that same jury heard evidence on mitigation...." This matter was addressed by the Court of Appeals of Maryland, which held that neither state law nor federal law compels a bifurcated sentencing proceeding in capital cases, such as Mr. Grandison's. *Grandison III,* 341 Md. at 229–30, 670 A.2d 398. In so holding, the Court of Appeals of Maryland properly applied clearly established federal law in an objectively reasonable manner, and no relief is available to Mr. Grandison under 28 U.S.C. § 2254(d).

■ Mr. Grandison also claims that the trial court should have given the jury a limiting instruction as to the effect of Mr. Grandison's prior record and should have redacted evidence of his federal convictions arising from the same course of con-

duct. These issues were dealt with by the Court of Appeals in *Grandison III*, 341 Md. at 212–13 and 251–53, 670 A.2d 398. In that there is no indication whatever that the state court's resolution of these issues fell outside the requirements of 28 U.S.C. § 2254(d), relief will also be denied on these contentions. Contrary to petitioner's suggestion, this Court is firmly convinced that Maryland's death penalty statute is not unconstitutional because of its failure to bifurcate the proceedings on aggravating *versus* mitigating circumstances in a death penalty sentencing. Jurors are presumed capable of following judicial instructions, including instructions as to the purpose for which evidence can be considered, and this Court finds no warrant in the United States Constitution for invalidating the Maryland death penalty procedure. To the extent that the decision of Judge Williams of this Court in *Colvin–El v. Nuth*, Civil No. AW 97–2520, 1998 WL 386403 (D.Md.1998)(unpublished), can be read to the contrary, this Court disagrees with it, as did the Fourth Circuit in reversing the relevant part of the District Court's decision. *See Colvin–El v. Nuth*, Nos. 98–27 and 98–28, 1999 WL 436776 (4th Cir.1999)(unpublished).

▇▇▇ Petitioner's next *pro se* contention seems to be that he and his counsel disagreed on the nature of his defense, and that he should have had the right to pursue the theory of defense that he wanted to pursue. Certainly, a client is entitled to direct the presentation of his case, and when he does not like the way an attorney is presenting it, he may fire that attorney, if the attorney is retained. The situation is somewhat different with regard to appointed counsel whom a client may not discharge simply on a disagreement. But, in this case, as discussed *ante*, the trial court properly determined that Mr. Grandison had *waived* counsel, and Mr. Grandison will not be allowed to revisit that issue in the guise of a denial of the constitutional right to present a defense. The fact of the matter is that Mr. Grandison *did* pres-

ent his case the way he wanted to present it, and the fact that he voluntarily and intelligently chose to do so *pro se* renders harmless beyond any reasonable doubt any constitutional issues that occurred prior thereto if there was one, which there was not.

Petitioner's next *pro se* contention is that the Court of Appeals of Maryland could not constitutionally "substitute there [sic] judgment for that of the jury." This is simply a rehash of the sufficiency-of-the-evidence argument dealt with *ante*, as well as the "transferred intent" argument also dealt with *ante*, and there is no merit whatever in these contentions.

Next, Mr. Grandison contends that he was denied a substantial constitutional right when the Court of Appeals of Maryland "improperly" applied Maryland speedy trial rules to his case in an *ex post facto* fashion. This issue is frivolous, for the reasons stated in the decision of the Court of Appeals in *Grandison I*, 305 Md. at 713–17, 506 A.2d 580. There simply was no *ex post facto* aspect to this ruling of the Court of Appeals, in that it did not create an offense, or increase the punishment, for conduct that occurred prior to either the decision of the court or the enactment of the rule and statute in question. To the extent that Mr. Grandison argues that this holding deprived him of a protected liberty interest without due process, the argument is frivolous. *See Estelle v. McGuire, supra.*

Grandison's next challenge is to the guilt-innocence phase of his conviction. He claims that he was improperly convicted on the third count of the indictment, because the names of the alleged victims of the conspiracy to kill were not listed in that count of the indictment. The argument is frivolous, as the indictment was legally sufficient as a matter of state and federal constitutional law, fully apprising Mr. Grandison of the charges of which he had to defend, *see Ashford v. Edwards*, 780 F.2d 405 (4th Cir.1985), and was procedur-

ally defaulted, *see Harris v. Reed, supra,* in any event.

Mr. Grandison next raises an issue with regard to whether he was properly convicted, by sufficient evidence, under the fourth count of the indictment, charging him with use of a handgun in the commission of a felony or crime of violence. His claim is that the MAC–11 is a machine gun, not a hand gun. The evidence was plainly sufficient to allow the jury to find that the MAC–11 is a handgun within the coverage of Md. Ann.Code art. 27, section 36B, and that it was used to kill the victims. *Jackson v. Virginia, supra.*

In the last contention in his first supplement, petitioner once again raises the issue that he could not be convicted of Susan Kennedy's death because the proof showed that he did not intend to have her murdered, but, rather, to have Cheryl Piechowicz murdered. The Maryland appellate court, in deciding the issue of transferred intent that underlies this contention, did not improperly substitute its judgment for the verdict of the jury, and the evidence was plainly sufficient as a matter of Maryland law to justify the conviction, under settled Supreme Court precedent, *viz., Jackson v. Virginia, supra.* Thus, there is no ground for federal relief under Section 2254(d).

The first contention in petitioner's second supplement is that the Maryland courts erroneously concluded that there was no violation of the Interstate Agreement on Detainers (IAD), codified in Maryland at Md. Ann.Code art.27, section 616E. This contention was analyzed carefully by the Court of Appeals in *Grandison II,* 305 Md. at 717–18, 506 A.2d 580, and Mr. Grandison has not demonstrated that the state court's resolution of the factual and legal issues surrounding the IAD question (including the absence of both a detainer and state custody) is objectively unreasonable under Section 2254(d), as amended. Furthermore, violation of the IAD affords no ground for federal habeas corpus relief, absent a showing that there

resulted a fundamental defect, *see Reed v. Farley,* 512 U.S. 339, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994) and *Kerr v. Finkbeiner,* 757 F.2d 604, 606–07 (4th Cir.), *cert. denied,* 474 U.S. 929, 106 S.Ct. 263, 88 L.Ed.2d 269 (1985), which certainly was not the case here. To afford relief on this claim for the relatively slight delay beyond the IAD's 120–day period would be clearly inconsistent with the case law analyzing IAD violations in the Section 2254 context that are cited above.

The second contention in the second supplement is that the State violated Mr. Grandison's double jeopardy protections when it sentenced him again for capital murder, using a revised sentence determination form, after the first death sentence had been vacated. The Court of Appeals, in rejecting this contention and a related contention that the revised form "could only be applied prospectively," made an objectively reasonable application of governing federal precedent, specifically analyzed in its discussion, *Grandison III,* 341 Md. at 256–57, 670 A.2d 398, and, thus, under Section 2254(d), as amended, this claim has no merit.

As the final contention in his second supplemental petition, Mr. Grandison takes issue with the trial court's refusal to allow him to introduce the federal grand jury testimony of one Gwen Farmer. The Court of Appeals, analyzing this issue under Maryland law, held the testimony inadmissible under Maryland's hearsay rule. *Grandison II,* 305 Md. at 743–46, 506 A.2d 580. This poses only an issue of state evidentiary law, not cognizable on federal habeas corpus review, as there is no indication whatever in this case that any alleged evidentiary error violated due process or impugned the fundamental fairness of the trial. *See Estelle v. McGuire, supra.*

Finally, to the extent that petitioner raises, by counsel, issues under the ICCPR other than the double jeopardy issue dealt with above, the Court notes,

simply, that these issues have not been exhausted in the state courts of Maryland, and, even if it were (as it probably is) futile to try to exhaust them, they have no merit. The federal courts have observed that the ICCPR gives no more protection in criminal prosecutions, including death penalty cases, than that afforded by the Constitution, *see, e.g., White v. Johnson,* 79 F.3d 432, 440 n. 2 (5th Cir.), *cert. denied,* 519 U.S. 911, 117 S.Ct. 275, 136 L.Ed.2d 198 (1996), and there is no provision of the Constitution that would make Mr. Grandison's execution unlawful or the imposition of cruel and unusual punishment, within the condemnation of the ICCPR or the Constitution.

For the reasons stated, an Order will be entered separately, denying and dismissing the petition of Anthony Grandison for federal habeas corpus relief, on the merits.

*ORDER*

For the reasons stated in the foregoing Memorandum Opinion, it is, this 6th day of January, 2000, by the Court, ORDERED:

1. That the present petition of Anthony Grandison for federal habeas corpus relief, together with its supplements, BE, and it hereby IS, DENIED and DISMISSED, on the merits; and

2. That the Clerk of Court mail copies hereof and of the foregoing Memorandum Opinion to counsel for the parties.