# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### March 19, 2003 Session

## STATE OF TENNESSEE v. TIMOTHY CLAYTON THOMPSON

**Direct Appeal from the Criminal Court for Knox County**
**No. 70668     Mary Beth Leibowitz, Judge**

---

**No. E2002-01710-CCA-R3-CD**
**August 12, 2003**

---

Defendant, Timothy Clayton Thompson, pled guilty to one count of especially aggravated kidnapping, a Class A felony, and one count of aggravated rape, a Class A felony, without a recommendation from the State as to sentencing. Following a sentencing hearing, the trial court sentenced Defendant to twenty-two years for each felony count and ordered the sentences to run consecutively. Defendant now appeals the length of his sentence and the trial court's imposition of consecutive sentences. After a careful review of the record in this matter, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

Bruce E. Poston, Knoxville, Tennessee, for the appellant, Timothy Clayton Thompson.

Paul G. Summers, Attorney General and Reporter; Angele M. Gregory, Assistant Attorney General; Randall E. Nichols, District Attorney General; Marsha Mitchell, Assistant District Attorney General; and Eugenia Grayer, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Defendant's plea to each offense was a "blind" plea in that the parties did not reach any agreement as to the length and manner of service of Defendant's sentence to be imposed by the trial court. Defendant appeals his sentence arguing first that the trial court erred in imposing consecutive sentences and, secondly, that the trial court improperly enhanced Defendant's sentence by finding that the offense was committed to gratify Defendant's desire for sexual pleasure and excitement. Tenn. Code Ann. § 40-35-114(7). Defendant also contends that the trial court erroneously enhanced his sentence by applying factor 11 because bodily injury is an essential element of the offenses of especially aggravated kidnapping and aggravated rape. *Id.* -114(11). At the time of the sentencing hearing, there were twenty-two statutory enhancement factors listed in Tennessee Code Annotated

section 40-35-114 (Supp. 1997). Subsequently, in Public Acts 2002, ch. 849, §2, the legislature added a twenty-third enhancement factor, but listed it as enhancement factor (1) and renumbered previous factors (1) through (22) as (2) through (23). *See* Tenn. Code Ann. § 40-35-114 (Supp. 2002). In this opinion, we will refer to the enhancement factors of Tennessee Code Annotated section 40-35-114 as they existed at the time of the sentencing hearing.

After a careful review of the record and the arguments of counsel, we affirm the judgment of the trial court.

## a. Background

The facts and circumstances surrounding Defendant's offenses are derived from the State's offer of proof at the guilty plea submission hearing and the testimony of Defendant and the victim, AL, at the sentencing hearing. The victim will be referred to only by her initials. Early on the morning of April 25, 2000, AL was washing her car at a carwash located near her house. Defendant approached AL and hit her first in the back of the neck and then in the head as he forced her into his truck. Defendant pushed AL up against the side of the truck and pressed a knife to her side. Defendant bound AL's ankles and wrists with plastic ties and engaged in sexual intercourse with the victim. Later, Defendant untied AL's restraints and drove around the county with AL still in the truck. AL engaged Defendant in conversation hoping to put Defendant at ease so that he would release her unharmed. Defendant talked about his girlfriend and even spoke with his office on his cellular phone at one point. Defendant also showed AL where he lived. After approximately two hours, Defendant returned AL to the carwash and drove off. AL immediately returned to her home, and her uncle took her to the hospital. The police were then notified of the offenses.

Defendant made no effort to disguise his identity from AL. The name of the company he worked for was painted on the side of the truck he was driving and also was embroidered on his shirt. A clipboard showing his name on one of the attached papers was clearly visible to AL, and his belt buckle was embossed with the name "Tim." Although he realized he would be sent to prison for his actions, Defendant told AL he would not kill her because he did not want to get the death penalty.

After the police were contacted, Investigator Snodderly questioned Defendant's employer who said that Defendant had called that day to say he would not be back to work because he had a family emergency. Defendant was later apprehended at his residence.

At the sentencing hearing, AL testified that she used to be outgoing but was now afraid to go out of the house alone or mingle in large crowds. Although she had undergone physical therapy, AL still suffered from pinched nerves in her back where Defendant had hit her. The incident brought on panic attacks that hindered her working and AL had trouble trusting anyone now, particularly older men.

On cross-examination, AL confirmed that she had previously described her conversation with Defendant as "surreally normal." When AL told Defendant she had left her keys in her car, Defendant drove back to the carwash and retrieved them. Although she did not remember seeing a knife, AL said that she felt one pressed to her side. AL also confirmed that she had described the sex act as lasting a very short time.

Defendant testified that he was forty-eight years old and worked as a master electrician. He dropped out of school in the eleventh grade to go to work, and he had been continuously working since then except for the time he spent incarcerated in Florida. Defendant was previously married for three or four years, but the marriage ended when Defendant discovered his wife was having an affair with his brother. Defendant raised their daughter until Defendant was incarcerated in Florida when she was sixteen. Defendant's father was an alcoholic who periodically struck his wife and children with his fists. At five, Defendant was sexually abused by an uncle.

When Defendant was released from prison in Florida, he moved back to Tennessee and transferred his supervised probation from Florida to Tennessee. Since his return, Defendant had been steadily working and had a good relationship with his girlfriend.

The morning of the incident, Defendant said he stopped to buy coffee at a local food store near the carwash. He bought some gas and a newspaper and was working the crossword puzzle when AL arrived at the carwash. Defendant remembered noticing that she was attractive but could not explain why he accosted AL. Defendant denied that he raped AL because he thought it would be pleasurable and said that although he found AL attractive, "it wasn't any fun" because he knew what he was doing was wrong. Defendant had no doubt AL could identify him after he released her and that he would go to prison because of the abduction and rape. Defendant decided to plead guilty in order to spare AL any further ordeal by going to trial.

Defendant said that he pled guilty in Florida to charges of false imprisonment and sexual battery with a deadly weapon in 1992 and served more than four years in confinement before being placed on "intensive probation." In that situation, the victim came into the bar where Defendant was drinking a beer and asked for directions to a hotel. The victim drank a beer and bought a beer for Defendant. When she returned to her car, Defendant followed her out to make sure she understood the directions. At some point, he got into the victim's car. Defendant had a knife, but it was just for "persuasion," not to harm her. After the rape, Defendant gave the knife to the victim and she threw it out of the car's window. They drove back to the bar, and Defendant left in his own car. Defendant agreed that he had been rougher with the Florida victim but that was because she resisted more than AL. Defendant had no explanation for why he kidnapped and raped the woman in Florida.

Based on the evidence presented at the sentencing hearing, the trial court found that Defendant's steady employment history and his concern for his daughter reflected positively in its analysis. The trial court also recognized the impact Defendant's childhood may have had on his actions as an adult but assigned this factor little weight. The trial court accredited Defendant's remorse for the offense and considered his release of the victim as a mitigating factor.

The trial court found several enhancement factors. First, based on Defendant's admission that he was attracted to the victim through no fault of her own, the trial court found that the rape was committed to gratify Defendant's sexual pleasure and excitement. Tenn. Code Ann. § 40-35-114(7). Secondly, Defendant caused bodily injury to the victim and had previously been convicted of a felony in Florida that caused bodily injury to the victim of that offense. *Id.* -114(11). Finally, Defendant committed the offenses while on probation. *Id.* -114(13)(C). Although the trial court did not specifically note which enhancement and mitigating factors it applied to which offense, the trial court sentenced Defendant to twenty-two years for each felony.

The trial court concluded that Defendant's prior convictions for sexual battery and false imprisonment under Florida statutes would be considered a Class A felony and "something under a [Class] B felony" respectively if committed in Tennessee. However, the trial court declined to sentence Defendant as a multiple offender and sentenced him instead as a Range I, standard offender. *See Id.* -106. Based on a finding that Defendant was a dangerous offender and had committed the offenses while on probation, the trial court ordered Defendant's sentences to run consecutively for a net effective sentence of forty-four years. *Id.* -115(b)(4) and (6).

Defendant now appeals the length and manner of service of his sentence arguing that the trial court erred in ordering his sentences for especially aggravated kidnapping and aggravated rape to run consecutively. In addition, Defendant contends that the trial court improperly applied enhancement factors in its sentencing determinations and failed to give proper consideration to the mitigating factors.

### b. Consecutive Sentences

When a defendant challenges the length or the manner of service of his or her sentence, this Court must conduct a *de novo* review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d); *State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002). This presumption, however, is contingent upon an affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999). If the record fails to show such consideration, the review of the sentence is purely *de novo*. *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

In making its sentencing determinations the trial court must consider: (1) the evidence presented at the sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct; (5) any appropriate enhancement and mitigating factors; (6) the defendant's potential or lack of potential for rehabilitation or treatment; and (7) any statements made by Defendant in his own behalf. Tenn. Code Ann. §§ 40-35-103 and -210; *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995). If the trial court has imposed a lawful sentence by following the statutory sentencing procedure, given due consideration and proper weight to the factors and sentencing principles, and made findings of fact adequately supported by the record, this Court may not modify

the sentence even if it would have preferred a different result. *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). The defendant bears the burden of showing that his sentence is improper. Tenn. Code Ann. § 40-35-401(d) Sentencing Commission Comments; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

When a Defendant is convicted of multiple crimes, the trial court, in its discretion, may order the sentences to run consecutively if it finds by a preponderance of the evidence that a defendant falls into one of seven categories. Tenn. Code Ann. § 40-35-115. In this instance, the trial court found that Defendant was "a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. §40-35-115(a)(4). However, if the trial court rests its determination of consecutive sentencing on this category, the court must make two additional findings. *State v. Imfeld*, 70 S.W.3d at 708. First, the trial court must find that an extended sentence is necessary to protect the public from further criminal conduct by Defendant, and, second, it must find consecutive sentencing to be reasonably related to the severity of the offenses. *State v. Wilkerson*, 905 S.W.2d 933, 939 (Tenn. 1995).

Although such specific factual findings are unnecessary for the other categories enumerated in Tennessee Code Annotated section 40-35-115(b), the imposition of consecutive sentences is also guided by the general sentencing principles that the length of a sentence be 'justly deserved in relation to the seriousness of the offense' and 'no greater than that deserved for the offense committed.'"*Imfeld*, 70 S.W.3d at 708 (quoting Tenn. Code Ann. §§ 40-35-102(1) and -103(2)); *State v. Lane*, 3 S.W.3d 456, 461 (Tenn. 1999).

Defendant argues, and we agree, that the trial court did not make the requisite findings in imposing consecutive sentencing based on Defendant's status as a dangerous offender. *See Wilkerson*, 905 S.W.2d at 939. The trial court's primary concern in its sentencing determinations was Defendant's inability to explain why he committed either the Tennessee offenses or the Florida offenses. Without knowing the reason for his conduct, the trial court expressed its doubt that Defendant would be able to stop his criminal behavior. Although the trial court did not make a specific finding as such, Defendant's inability to control his behavior as reflected in the similarities between the two incidents for which he was convicted as well as his acknowledgment that the incidents "just happened" support a conclusion that consecutive sentencing is appropriate to protect the public from Defendant's further criminal conduct.

Because we conclude that consecutive sentencing was appropriate based on the fact that Defendant committed the offenses while on probation, however, we do not need to address the trial court's finding that Defendant is a dangerous offender at length. Tenn. Code Ann. 40-35-115(b)(6). It is necessary to find the presence of only one of the statutory categories listed in Tennessee Code Annotated section 40-35-115(b) to support the imposition of consecutive sentencing. The record clearly shows that at the time of the offenses Defendant had not fully served his 1992 Florida sentence of ten years confinement and twenty years on probation. Because there is ample evidence

that Defendant was on probation at the time that the offenses were committed, consecutive sentencing is appropriate. *Id.* -115(b)(6).

Notwithstanding his probationary status, Defendant argues that ordering him to serve his sentences consecutively is neither justly deserved nor the least severe punishment to protect the public. *See Imfield*, 70 S.W.3d at 708. Defendant points out that he is now forty-nine years old. After he serves his sentence for the Tennessee offenses, he will be returned to Florida where he faces a sentence of confinement in excess of twenty years. Even if Defendant serves his Tennessee sentences concurrently, Defendant speculates that he will either be a very old man when he is released or he will die in prison. As a result, Defendant argues that consecutive sentencing is not the least severe punishment necessary to protect the public.

No doubt Defendant is correct when he surmises that there is a good possibility that he will not live to see his release from prison. The underlying principle behind consecutive sentencing, however, is not whether the length of the sentence is logical based on the age of the defendant at sentencing, but whether a defendant should "escape the full impact of punishment for one of [his] offenses." *State v. Robinson,* 930 S.W.2d 78, 85 (Tenn. Crim. App. 1995)(Defendant received consecutive life sentences for two first-degree murder convictions). *See also State v. Arnett*, 49 S.W.3d 250, 264-265 (Tenn. 2001)(Defendant ordered to serve sentences for especially aggravated kidnapping and aggravated rape consecutively); *Lane*, 3 S.W.3d at 463 (Defendant ordered to serve sentences for convictions of statutory rape and official misconduct consecutively.) "The power of a trial judge to impose consecutive sentences ensures that defendants committing separate and distinct violations of the law receive separate and distinct punishments." *Robinson*, 930 S.W.2d at 85.

Through his actions, Defendant has displayed an apparently uncontrollable propensity to kidnap and rape victims who inadvertently crossed his path. As Defendant described the incident, the conscious thought of abducting AL never crossed his mind. "She was there and it–I can't answer the question. It was like a short–I don't know. It just happened. One–one second I was readin'. I was actually doin' the puzzle in the newspaper and drinkin' my coffee. She pulls in and I lost it, and I don't know. It just happened." Defendant was extended the leniency of probation for his Florida conviction despite a sentence of thirty years and then committed the same offenses using essentially identical methods of confinement and coercion in Tennessee to commit the rape of AL. The record supports a finding that consecutive sentencing is the least severe punishment necessary to protect the public and justly deserved in relation to the seriousness of Defendant's offenses.

Finally, Defendant urges as a matter of public policy that ordering Defendant to serve his sentences consecutively sends the wrong message to future offenders of similar offenses. Despite the fact that Defendant sought to minimize the victim's injuries, freely confessed and expressed sincere remorse for his crime, Defendant's sentence was only six years less than the maximum sentence available. Defendant argues that this is deterrence in reverse. That is, consecutive sentencing in this instance fails to encourage other offenders to "do the right thing" after they commit a crime as Defendant did since the only potential difference in sentencing between a violent

offender who tortures or seriously injures their victim and an offender who releases the victim unharmed is six years.

We agree that one of the purposes of the 1989 Criminal Sentencing Reform Act is to promote respect for the law by providing a general deterrent to those likely to violate criminal laws. Tenn. Code Ann. § 40-35-102(3)(A). While Defendant may interpret this purpose as a mandate that the trial court "send a message" through its sentencing determinations, the function of the sentencing court is to determine the appropriate sentence based on all of the sentencing principles, the nature and circumstances of the offense, and any applicable enhancement and mitigating factors. Although the 1989 Criminal Sentencing Reform Act seeks to provide "a fair sense of predictability of the criminal law and its sanctions," the determination of a sentence necessarily involves the discretion of the sentencing court. *State v. Carpenter*, 69 S.W.3d 568, 576 (Tenn. Crim. App. 2001). The concept of individualized sentencing that underlies the sentencing provisions requires each determination of the length or manner of service of a sentence to be conducted on a case specific basis. *State v. Ross*, 49 S.W.3d 833, 849 (Tenn. 2001); *State v.* Moss, 727 S.W.2d 229, 235 (Tenn. 1986); *Carpenter*, 69 S.W.3d at 576.

The goal of deterrence is not as Defendant suggests, to reward restrained conduct during criminal acts. It is to forestall others from committing similar offenses. Any positive aspects of Defendant's conduct during the victim's ordeal were properly considered by the trial court during its analysis of the applicability of mitigating factors in determining the length of Defendant's sentence. Defendant's release of the victim, his cooperation with the authorities, and his expressions of remorse were considered by the trial court in mitigation of his sentence under Tennessee Code Annotated sections 40-35-113(13) and 39-13-304(b)(2).

Based on our *de novo* review, we conclude that the trial court did not err in ordering Defendant to serve his sentences consecutively.

## c. Length of Sentence

Defendant argues that the trial court erroneously applied enhancement factors and failed to give sufficient weight to the mitigating factors in determining the length of Defendant's sentence. The weight placed on one factor by the trial court may vary from that assigned to another, and the legislature has specifically declined to assign a numerical value to mitigating and enhancement factors. Tenn. Code Ann. § 40-35-210, Sentencing Commission Comments; *State v. Spratt*, 31 S.W.3d 587, 606 (Tenn. 2000). The weight accorded enhancement and mitigating factors is within the trial court's discretion so long as the record supports its findings and the findings comply with sentencing principles. *State v. Kelly*, 34 S.W.3d 471, 479 (Tenn. Crim. App. 2000).

Defendant was convicted of especially aggravated kidnapping and aggravated rape. Both offenses are classified as Class A felonies. As a Range I, standard offender, the sentencing range for a Class A felony is not less than fifteen years nor more than twenty-five years. Tenn. Code Ann. § 40-35-112(a)(1). The presumptive sentence for a Class A felony is the midpoint of the range if

there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). If both enhancing and mitigating factors are present, the trial court must start at the midpoint of the range, enhance the sentence within the range as appropriate for the enhancing factors, and then reduce the sentence as appropriate for the mitigating factors. Tenn. Code Ann. § 40-35-210(e).

At the conclusion of the sentencing hearing, the trial court found three applicable enhancement factors. First, Defendant committed the offenses to gratify his desire for pleasure or excitement. Tenn. Code Ann. § 40-35-114(7). Secondly, the trial court concluded that the offenses resulted in bodily injury or the threat of bodily injury to the victim and Defendant was previously convicted of a felony that resulted in bodily injury. *Id.* -114(11). Finally, the trial court applied factor 13 because Defendant was on probation at the time the offenses were committed. *Id*. -114-13(C). As mitigating factors, the trial court considered Defendant's work history, his relationship with his daughter and grandson and his troubled childhood. *Id.* -113(13). In addition, the trial court concluded that Defendant was entitled to the statutory mitigating factor provided by Tennessee Code Annotated section 39-13-305(b)(2) for his especially aggravated kidnapping conviction because Defendant voluntarily released the victim alive. Based on these factors, the trial court sentenced Defendant to twenty-two years for each felony offense. The trial court, however did not specifically state which enhancement and mitigating factors it applied to each of Defendant's two separate convictions. Our review of the length of Defendant's sentence is therefore *de novo*.

Defendant does not dispute the applicability of factor (13) because Defendant was on probation when the offenses were committed. Defendant, however, argues that factor (7) was erroneously applied because there is no evidence in the record to support a finding that Defendant committed the offenses to satisfy his desire for pleasure or excitement. The victim testified that the sexual act was of a very short duration and that most of the time was spent driving around the county. AL also never testified that Defendant made any sexually explicit comments. Defendant could not explain why he kidnapped and raped AL and testified that the rape was "not any fun."

Pleasure or excitement is not an essential element of the offense of aggravated rape and, therefore, may be used as an enhancement factor in determining the length of the defendant's sentence. *State v. Adams*, 864 S.W.2d 31, 35 (Tenn. 1993). Application of factor (7) requires an inquiry into the motivation behind the defendant's actions. *State v. Kissinger,* 922 S.W.2d 482, 490 (Tenn. 1996). Some rapes are not committed for pleasure at all but may be "simply acts of brutality resulting from hatred or the desire to seek revenge, control, intimidate, or are the product of a misguided desire to just abuse another human being." *Adams*, 864 S.W.2d at 35. The State has the burden of proving that the defendant was motivated by a desire to satisfy his pleasure or excitement. *State v. Spratt*, 31 S.W.3d 587, 608 (Tenn. Crim. App. 2000).

At the sentencing hearing, Defendant testified that he spotted AL as she drove into the carwash and that he found her attractive although she was not dressed provocatively and did nothing to gain his attention except perhaps glance in his direction. At that point, he "lost it." Defendant agreed at the hearing that AL was "a very nice looking young lady." Although Defendant maintained that the sexual act itself was not any fun because he felt guilty, Defendant continued to confine AL

for nearly two hours as he drove around the vicinity. During that time, Defendant carried on a "surreally normal" conversation and even drove AL past his residence. When AL told Defendant that she was worried about her car, Defendant drove back to the carwash to retrieve her keys and then continued to drive around.

Defendant contends that the trial court only found factor (7) applicable because he said that AL was attractive. Defendant strenuously argues that when the State asked him if he found AL attractive, he had no choice but to answer "yes." If he had replied negatively, Defendant risked further insulting the victim who was in the courtroom or alienating the court with his callousness. Even if Defendant found himself in a dilemma while testifying, however, the record amply supports the trial court's application of factor (7). The actions of Defendant, taken with his stated perceptions at the time of the crimes, are circumstantial evidence that factor (7) applies. Defendant is not entitled to relief on this issue.

Defendant also argues that the trial court erroneously applied factor (11) because bodily injury is an essential element of especially aggravated kidnapping and aggravated rape. Defendant misconstrues the intent of factor (11) which provides that a sentence may be enhanced "when the felony resulted in death or bodily injury or involved the threat of death or bodily injury to another person and the defendant has been previously convicted of a felony that resulted in death or bodily injury." Tenn. Code Ann. § 40-35-113(11). The focus of factor (11) is the defendant's continuing pattern of violent behavior, and a prior conviction for a felony that caused bodily injury is not an essential element of either especially aggravated kidnapping or aggravated rape. The record shows that Defendant was convicted of sexual battery with a deadly weapon in Florida during which the victim suffered bodily injury. This offense is defined under Florida statutes as a "life felony" and is equivalent in Tennessee to a Class A felony. Fla. Stat. Ann. § 794.011(3). The trial court, therefore, properly considered factor (11) as an enhancement factor.

Finally, Defendant agues that the trial court did not assign the proper weight to the statutory mitigating factor found in Tennessee Code Annotated section 39-13-305(b)(2). In an effort to protect the safety of a kidnapping victim, this section provides that "if the offender voluntarily releases the victim alive or voluntarily provides information leading the victim's safe release, such actions should be considered by the court as a mitigating factor at the time of sentencing." Tenn. Code Ann. § 39-13-305(b)(2). Defendant argues that the legislature's concern for the victim implies that this mitigating factor should be given significant weight in a trial court's determinations. We disagree with Defendant's interpretation. The weight assigned this mitigating factor, like those found in Tennessee Code Annotated section 40-35-113, is left to the discretion of the trial court and may vary depending upon the nature and circumstances surrounding the offense. *See State v. Arnett*, 49 S.W.3d 250, 264 n. 9 (Tenn. 2001)(Factor given little weight because of the callous nature in which the defendant left the victim); *State v.* McCann, 2001 WL 1246383 *11, No. M2000-2290-CCA-R3-CD (Tenn. Crim. App., Nashville, October 17, 2001) *perm. to appeal denied* (Tenn. 2001)(Factor entitled to little weight when the victims suffered physical and psychological injuries prior to release); State *v. Pipkin*, 1997 WL 749430 *8, No.01C01-9605-CR-00210 (Tenn. Crim. App.,

Nashville, December 4, 1997)(Notwithstanding the voluntary release of the victim, factor entitled to little, if any, weight, when the victim was raped five times during the period of confinement).

We agree with Defendant that the trial court was mandated to consider AL's voluntary release as a mitigating factor. Before her release, however, AL was hit, drug into Defendant's truck, tied up, and raped. Based on the record, we cannot conclude, as Defendant urges, that this mitigating factor outweighs all of the applicable enhancement factors in determining the length of Defendant's sentence.

As noted above, the trial court did not distinguish between offenses when enumerating the enhancement and mitigating factors it relied upon in its sentencing determinations. In our *de novo* review, we find that enhancement factor (7) is applicable to both the especially aggravated kidnapping conviction and the aggravated rape conviction. Enhancing a defendant's sentence because the offense was committed to satisfy the defendant's desire for pleasure or excitement is not limited to sexual offenses. *Kissinger*, 922 S.W.2d at 490. The evidence supports the conclusion that Defendant continued to confine AL after the rape due to the fact that her presence gave him pleasure. Likewise, factor (11) is applicable to both offenses. Defendant does not dispute, and we agree, that factor (13), the offense was committed while Defendant was on probation, applies to both convictions. The trial court also found that Defendant had been previously convicted in Florida of a similar crime. Although not relied upon by the trial court, we conclude that factor (1), Defendant has a previous history of criminal convictions, may be considered as an enhancement factor in determining Defendant's sentences for both offenses. In our *de novo* review, this Court may consider any enhancement or mitigating factors supported by the record and the factual findings of the trial court. *State v. Winfield*, 23 S.W.3d 279, 284 (Tenn. 2000).

As mitigating factors, Defendant's steady work history and family history is entitled to some weight, though marginally so, for both offenses. Defendant's release of the victim may be considered as a mitigating factor only in connection with the especially aggravated kidnapping conviction. Tenn. Code Ann. § 39-13-305(b)(2). Based on the presence of four enhancement factors and one mitigating factor in Defendant's aggravated rape conviction, and four enhancement factors and two mitigating factors in his especially aggravated kidnapping conviction, we conclude in our *de novo* review that Defendant's sentences of twenty-two years for each conviction are appropriate.

## CONCLUSION

After a thorough review of the record, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE

-10-