# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs April 11, 2001

## STATE OF TENNESSEE v. ANTHONY CARPENTER

### Direct Appeal from the Criminal Court for Shelby County
### No. 98-08762    Chris Craft, Judge

### No. W2000-01229-CCA-R3-CD - Filed August 16, 2001

The Defendant, Anthony Carpenter, was convicted by a jury of second degree murder. In this appeal as of right, he asserts that the evidence was insufficient to support his conviction and that the trial court erred by sentencing him to twenty-three years incarceration. We find no error; thus, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOE G. RILEY and JOHN EVERETT WILLIAMS, JJ., joined.

Tony N. Brayton (on appeal), and Marvin E. Ballin (at trial), Memphis, Tennessee, for the Appellant, Anthony Carpenter.

Paul G. Summers, Attorney General and Reporter; Laura E. McMullen, Assistant Attorney General; William L. Gibbons, District Attorney General; and Phillip Gerald Harris, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

At trial, Erma Atwell testified that she last saw the victim, her nineteen-year-old son, Derek Atwell, around 2:00 a.m. on January 25, 1998. Derek Atwell left her house that morning with his brother, Frank Atwell, to take one of their friends home. They left in Derek Atwell's car, which was a blue Oldsmobile Cutlass. According to Ms. Atwell, Derek loved his car, which he had purchased with his own money. Derek washed the car often and was very proud of it.

Tracy Strickland testified that she first met Derek Atwell on January 25, 1998 at the apartment of her friend, Kim, in Memphis, Tennessee. Ms. Strickland was with a group of six

people, including Derek Atwell, at the Village Square Apartments. The others were Kim,[1] Theresa Ellis, Frank Atwell, and Bobby Lee Todd. They were cooking breakfast and talking. Derek had driven his car there, and he went outside to check on it. Ms. Strickland heard Derek yelling that someone had broken into his car, and the group went outside to see what had happened. Ms. Strickland saw that the steering column had been removed from Derek's car. Derek started walking by himself toward the back of the apartment complex. Ms. Strickland could barely see Derek when she heard gunshots. At the sound of gunfire, everyone but Derek ran back up to Kim's apartment, where the police were called. Frank Atwell asked Theresa Ellis to drive him around the apartment complex to where Derek was, and she did. Ms. Strickland and Bobby Lee Todd ran to where Derek had been shot, and they found him lying on the ground. He was very bloody. According to Ms. Strickland, Frank Atwell and Bobby Lee Todd picked up Derek Atwell and placed him in the backseat of Theresa Ellis' white Saturn automobile to take him to the hospital. However, they decided to stop and wait for an ambulance. Ms. Strickland stated that Derek Atwell died in the backseat of the car. Ms. Strickland did not see Derek Atwell with a gun or any other weapon, but she also did not see the shooting.

Bobby Lee Todd testified that he was friends with both Derek Atwell and Frank Atwell. Early in the morning on January 25, 1998, Bobby Lee Todd and Frank Atwell went to pick up Derek Atwell at his home. They then went to the Village Square Apartments to have some breakfast before picking up another friend from jail later that morning. They arrived at the apartment around 6:00 a.m. Periodically, Derek Atwell would look out the door to check on his car. The last time Derek looked out the door, he saw that his car door was open. Derek rushed out of the apartment, followed by the others. When they got to the car, they discovered that Derek's wood-grain steering wheel was missing. Derek walked off through the apartments while Mr. Todd and Frank Atwell talked to a woman from another apartment. Mr. Todd testified that he and Frank Atwell heard Derek talking loudly, so they started walking toward him. Derek was standing on the passenger side of a Cadillac, asking the people inside where his steering wheel was. Mr. Todd and Frank Atwell started running toward Derek, when someone inside the Cadillac started shooting through the passenger side window. According to Mr. Todd, Derek started screaming and retreated from the Cadillac, but the shots continued. Derek stumbled back towards the hallway and then fell down. The others ran back to the apartment where Theresa and Kim called the police. Frank and Theresa drove around the building to Derek, and Frank and Mr. Todd picked up Derek and placed him in Theresa's car. They were going to take Derek to the hospital, but the police arrived. Mr. Todd did not see Derek with a gun, and he stated that neither he nor anyone else took a gun from Derek before the police arrived. Mr. Todd believed that if Derek had had a gun, he would have shot back.

Officer John Pike with the Memphis Police Department testified that he arrived at the scene of a homicide around 7:30 on the morning of January 25, 1998. He found the victim, Derek Atwell, in the backseat of a white vehicle, which was parked in the middle of the roadway at the Village Square Apartments. A young man was holding the victim in his arms, crying and screaming, "They killed my brother." Officer Pike found no weapons on the victim, in the white car, or in the general

---

[1] Kim's last name was never identified.

area of the victim.  He testified that there was broken glass on the ground by an empty parking space directly in front of the apartment complex.  Some live shell casings were found closer to the hallway.

Officer Shan Allen Tracy, a crime scene officer with the Memphis Police Department, testified that he arrived at the scene around 7:45 a.m.  A search of the victim, the white Saturn, and the neighboring area did not produce any weapons.  A red car adjacent to the empty parking spot had been damaged by gunfire.  Several bullet fragments were recovered from the red car.  Officer Tracy also found some "three-eighty" live rounds by a grassy area near the sidewalk.

Lieutenant Sammie Ballard testified that he was a sergeant in the homicide division in January 1998.  He assisted in the investigation of the death of Derek Atwell.  On January 27, 1998, Lieutenant Ballard interviewed the Defendant, Anthony Carpenter.  He informed the Defendant of his rights, and the Defendant signed the waiver of rights form.  At that time, the Defendant denied any involvement in Derek Atwell's death.  When the Defendant's alibi for the time of the shooting could not be confirmed, the Defendant was arrested.  The next day, Lieutenant Ballard again interviewed the Defendant.  His mother, Lula Carpenter, was present at the interview, although the Defendant was eighteen years old.  The Defendant was again advised of his rights, and both he and his mother signed the waiver of rights form.  The Defendant gave another statement, in which he admitted shooting Derek Atwell, but asserted that it was self-defense.

In his statement to Lieutenant Ballard, the Defendant stated that he shot and killed Derek Atwell at approximately 7:28 a.m. on January 25, 1998 at the Village Square Apartments.  According to the Defendant, he was sitting in the backseat of his 1982 Cadillac Fleetwood, which was parked in a parking space outside his nephew's apartment.  The Defendant's cousin, Haywood Carpenter, and a friend of the Defendant's nephew were also in the car.  The Defendant could not remember the name of his nephew's friend.  The Defendant stated he saw a "guy" walking around in front of some parked cars looking to see who was outside.  He saw the "guy" talking to another "guy."  After they finished their conversation, the "guy" walked around the Defendant's car to the street and stopped.  The Defendant gave the following account of the events that followed:

> Then he pulled the gun out and waved the gun then he walked back over to the car with the gun in his hand still waving it.  He bent down at the front passenger window and he was sayin [sic] something but the window was up and the doors were locked.  Then he pointed the gun at Andre [Haywood Carpenter] first and said, "get out of the car" and the second time he leaned to the back window and pointed the gun at me and said, "get out of the car."  At that point, I shot, it was just a reflex.  I don't remember the glass breaking, I just shot, I don't remember how many times I shot.

After the Defendant shot Derek, his nephew's friend, who was in the driver's seat, drove off.  They went to the Defendant's brother's house, where they parked the car in the backyard.  The Defendant stated that he "nodded off" for a while, and then he went to church with his sister.  He threw the gun which he used to shoot Derek in the river.  The Defendant described the gun which Derek had as "a chrome automatic."  He said he did not know why Derek pointed a gun at them and ordered them out of the car, but he assumed Derek was trying to rob them.  The Defendant denied breaking into a car and stealing a steering wheel.

Lieutenant Douglas Swauncy with the Memphis Police Department testified that he also assisted in the investigation of the homicide of Derek Atwell. He found the Defendant's Cadillac Fleetwood parked at the home of some of the Defendant's relatives. Lieutenant Swauncy testified that when he found the Cadillac, it did not have a steering wheel on it. He explained that the steering wheel was detachable and that it was laying on the front seat of the car. The steering wheel found laying in the seat was a wood-grain steering wheel. Some tools, including wire pliers and some type of adjustment wrench, were found in the car as well. The rear window and the rear passenger side window were broken out of the car.

Dr. O.C. Smith was certified as an expert in forensic pathology, and he testified that Derek Atwell died as a result of multiple gunshot wounds. Dr. Smith explained that there were a total of seven gunshot wounds where a bullet struck the body's surface, but because some were grazing gunshot wounds, a bullet could have grazed a portion of the body and then entered another area. Dr. Smith identified six separate gunshot wounds out of the total of seven wounds. One bullet entered Derek Atwell's chest, penetrating his heart and intestines. Another entered his right lower back and went into his left lung. The other wounds were to his back and his extremities.

Frederick Rogers testified for the defense. He testified that he was friends with the Defendant's nephew, Shulton Rubin. He was at Mr. Rubin's apartment at the Village Square Apartments in the early morning hours of January 25, 1998. The Defendant knocked on Mr. Rubin's door that morning and told Mr. Rogers to come outside. Mr. Rogers joined the Defendant outside, and they sat in the Defendant's car. They got out of the car, and the Defendant walked through a path with a four-way lug wrench. Mr. Rogers said that he saw the Defendant open the door of a blue car and get in it. Mr. Rogers got back in the Defendant's car, and the Defendant returned with nothing; he no longer even possessed the lug wrench. Mr. Rogers, the Defendant, and Haywood Carpenter sat in the car listening to music when they saw a "guy" walking around the apartments. Mr. Rogers said that the "guy" had "another man open his coat and take his coat off." The "guy" then walked past the Defendant's car approximately ten feet and looked back at the car. He turned around and came back towards the Defendant's car, pulling a gun from his pocket. Mr. Rogers said the gun was "a big chrome automatic weapon." According to Mr. Rogers, the "guy" walked back to the side of the car and told the occupants to get out of the car. He put the gun up to a window, and Mr. Rogers said he "knew [he] was fixing to die then." Mr. Rogers then heard gunshots and a scream. He looked out the rearview mirror, and he saw that the Defendant, who was in the backseat, was the person shooting. Mr. Rogers, who was in the driver's seat, got the car started and drove away quickly.

Mr. Rogers admitted that in the statement he originally gave to the police, he stated that he saw the Defendant enter a blue Oldsmobile and remove the steering wheel. He described the steering wheel in his statement as a "cherry oak wood grain steering wheel." However, he claimed at trial that he did not see the Defendant remove a steering wheel. He claimed that he said what the officers wanted to hear during the interview because they were threatening to arrest him and take him to jail. Although Mr. Rogers had an attorney present during the interview, he claimed that his attorney was asleep and did not assist him.

Lieutenant Ballard testified again as a rebuttal witness, and he stated that he interviewed Mr. Rogers in the presence of Mr. Rogers' attorney, Walter Bailey. The interview took place at 1:10 p.m. on January 30, 1998. Lieutenant Ballard asserted that the attorney, Walter Bailey, was not asleep during the interview. He also denied that the officers threatened to arrest Mr. Rogers and take him to jail if Mr. Rogers did not tell them what they wanted to hear.

## SUFFICIENCY OF THE EVIDENCE

The Defendant first claims that the evidence was insufficient to support his conviction of second degree murder. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956); State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

Second degree murder is defined by statute as a "knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1). "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Id. § 39-11-302(b). The Defendant does not dispute that he knowingly killed Derek Atwell, but he argues that he did so in a state of passion. He asserts that he therefore should have been found guilty of voluntary manslaughter, rather than second degree murder, because of that state of passion. Voluntary manslaughter is "the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Id. § 39-13-211(a). The jury was instructed on the lesser-included offense of voluntary manslaughter.

The proof is undisputed that Derek Atwell was angry because someone had broken into his car and that the Defendant shot and killed Derek Atwell after Derek Atwell approached the

Defendant's car. The proof is also undisputed that the Defendant shot Derek Atwell through the closed windows of his car at least six times. Neither Tracy Strickland nor Bobby Lee Todd saw Derek Atwell with a gun, and the police did not find a gun on Derek Atwell's body, in the white car, or near the scene of the homicide. Contrary to Ms. Strickland's and Mr. Todd's testimony, Frederick Rogers testified that Derek Atwell had a gun and pointed it at the occupants of the car. In his statement that he gave to the police, the Defendant also stated that Derek Atwell had a gun. Nevertheless, questions concerning conflicts in the trial testimony are resolved by the trier of fact, not by this Court. See Liakas, 286 S.W.2d at 859. The jury rejected the Defendant's evidence of self-defense and provocation when it convicted him of second degree murder. Looking at the evidence in the light most favorable to the State, the evidence was more than sufficient for a rational jury to find that the Defendant knowingly killed Derek Atwell. Thus, this issue is without merit.

## SENTENCING

The Defendant also claims that the trial court erred by sentencing him to twenty-three years incarceration because it failed to apply certain mitigating factors. When a criminal defendant challenges the length, range, or manner of service of a sentence, the reviewing court must conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In the event that the record fails to show such consideration, the review of the sentence is purely de novo. State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-210(a), (b), -103(5); State v. Williams, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

The presumptive sentence to be imposed by the trial court for a Class B, C, D or E felony is the minimum within the applicable range unless there are enhancement or mitigating factors present. Tenn. Code Ann. § 40-35-210(c). The presumptive sentence for a Class A felony is the midpoint of the sentencing range unless there are enhancement or mitigating factors present. Id. § 40-35-210(c). If there are enhancement or mitigating factors, the court must start at the presumptive sentence, enhance the sentence as appropriate for the enhancement factors, and then reduce the sentence in the range as appropriate for the mitigating factors. Id. § 40-35-210(e). The weight to be given each factor is left to the discretion of the trial judge. Shelton, 854 S.W.2d at 123. However, the sentence must be adequately supported by the record and comply with the purposes

and principles of the 1989 Sentencing Reform Act. State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986).

When imposing a sentence, the trial court must make specific findings of fact on the record supporting the sentence. Tenn. Code Ann. § 40-35-209(c). The record should also include any enhancement or mitigating factors applied by the trial court. Id. § 40-35-210(f). Thus, if the trial court wishes to enhance a sentence, the court must state its reasons on the record. The purpose of recording the court's reasoning is to guarantee the preparation of a proper record for appellate review. State v. Ervin, 939 S.W.2d 581, 584 (Tenn. Crim. App. 1996). Because the record in this case indicates that the trial court adequately considered the enhancement and mitigating factors as well as the underlying facts, our review is de novo with a presumption of correctness.

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence "even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). The defendant bears the burden of showing the impropriety of the sentence imposed. Ashby, 823 S.W.2d at 169.

In sentencing the Defendant, the trial court in this case began with a sentence of twenty years, which is the presumptive sentence for a Range I offender for a Class A felony. See Tenn. Code Ann. §§ 40-35-112(a)(1), -210(c). It then enhanced the Defendant's sentence to twenty-three years upon finding two enhancement factors: (1) that the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range and (2) that the defendant possessed or employed a firearm during the commission of the offense. See id. § 40-35-114(1), (9). The trial court determined that there were no mitigating factors; thus, the Defendant's sentence was set at twenty-three years.

The Defendant does not challenge the trial court's application of the two enhancement factors, but he asserts that the trial court should have considered the following mitigating factors: (1) that the defendant acted under strong provocation; (2) that substantial grounds exist tending to excuse or justify the defendant's conduct, though failing to establish a defense; and (3) that the defendant, because of his youth, lacked substantial judgment in committing the offense. See id. § 40-35-113(2), (3), (9). The trial court did in fact consider these factors, but rejected them, stating,

Looking at the mitigating factors, there is no proof that he acted under strong provocation. I find that under the circumstances of this case, this was not a self-defense case, that this defendant was stealing from this man, and when the man tried to get his property back, he just basically executed him.

There's no grounds tending to excuse his conduct as far as I can tell. I don't find that Mr. Carpenter's young age should be a mitigating factor because he's been told by the courts ever since the age of 14 to stop use [sic] deadly weapons, and will not stop. He knew exactly what he was doing. He carried that pistol that day with

the intent to go armed so that he could kill someone if they got in his way. I mean, he wasn't deer hunting. There's no other use for a handgun. And I cannot find any mitigating factors.

By finding the Defendant guilty of second degree murder, the jury rejected both the Defendant's theory of self-defense and his argument that at worst, his actions constituted voluntary manslaughter. This Court has determined that such jury findings "destroy any argument that [the defendant] acted under strong provocation when he fired upon" the victim; thus, "[t]he nature and circumstances of [this] offense[] do not demonstrate the kind of strong provocation required to mitigate the sentence[]." State v. Fred Edmund Dean, No. 03C01-9508-CC-00251, 1997 WL 7550, at *11 (Tenn. Crim. App., Knoxville, Jan. 10, 1997), perm. app. denied (Tenn. Sept. 2, 1997). Like the jury, the trial court rejected the Defendant's assertions that he acted in self-defense and that he was provoked by the victim. No gun was found on the victim, and both Ms. Strickland and Mr. Todd testified that they did not see the victim with a gun. The Defendant shot the victim at least six times from the backseat of his car. The evidence therefore supports the jury's and the trial court's determinations, and it was not error for the trial court to reject as mitigating factors that the Defendant acted under strong provocation and that substantial grounds exist tending to excuse or justify his conduct. See State v. Glenn A. Saddler, No. M1999-00934-CCA-R3-CD, 2000 WL 924639, at *5-6 (Tenn. Crim. App., Nashville, June 30, 2000), perm. app. denied (Tenn. Jan. 22, 2001) (rejecting the defendant's arguments that he acted under strong provocation and that substantial grounds existed tending to excuse his conduct).

Likewise, it was not error for the trial court to reject as a mitigating factor that because of his youth, the Defendant lacked substantial judgment in committing the offense. "In determining whether this factor is to be applied, courts should consider the concept of youth in context, i.e., the defendant's age, education, maturity, experience, mental capacity or development, and any other pertinent circumstance tending to demonstrate the defendant's ability or inability to appreciate the nature of his conduct." State v. Adams, 864 S.W.2d 31, 33 (Tenn. 1993). Other than asserting that the Defendant was eighteen at the time of the offense, there was no evidence presented at the sentencing hearing which would establish that the Defendant lacked substantial judgment because of his young age. Although the Defendant dropped out of high school, he reported being in excellent physical and mental health, and he had been employed on various occasions. Moreover, the Defendant has great familiarity with the criminal justice system. At the age of fourteen, he was found guilty of possession with intent to sell cocaine and possession of a pistol. At the age of sixteen, he was found guilty of possession with intent to sell marijuana and possession of a shotgun. On each occasion, he was removed from the custody of his parents and placed in a state juvenile facility. The Defendant also has other criminal offenses on his juvenile record. We believe that the Defendant's familiarity with the criminal justice system, his prior opportunities for rehabilitation, and his actions in the instant case "indicate a full appreciation for the seriousness of his acts." State v. Carter, 908 S.W.2d 410, 413 (Tenn. Crim. App. 1995). This issue thus has no merit.

The judgment of the trial court is affirmed.

_____
ROBERT W. WEDEMEYER, JUDGE