IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 22, 2004 Session

**STATE OF TENNESSEE v. JEFFERY D. HOSTETTER**

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2003-B-1299    Steve R. Dozier, Judge**

---

**No. M2003-02839-CCA-R3-CD - Filed December 29, 2004**

---

Defendant, Jeffery D. Hostetter, pled guilty to one count of furnishing intoxicating alcoholic beverages to a person under twenty-one years of age in violation of Tennessee Code Annotated section 39-15-404, a Class A misdemeanor, without a recommendation as to sentencing. Following a sentencing hearing, the trial court sentenced Defendant to eleven months, twenty-nine days, with fifty percent of the sentence to be served in confinement. On appeal, Defendant argues that the period of confinement imposed by the trial court is excessive and inconsistent with sentencing principles, and the trial court improperly applied enhancement factors and failed to apply appropriate mitigating factors. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

E. Covington Johnston, Jr. and J. Timothy Street, Franklin, Tennessee, for the appellant, Jeffery D. Hostetter.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Assistant Attorney General; Victor S. (Torry) Johnson III, District Attorney General; and Amy Eisenbeck, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I. Background**

We note at the outset that a copy of the transcript of Defendant's guilty plea submission hearing is not included in the record before this Court. Generally, a transcript is necessary in order to conduct an effective appellate review of sentencing. *State v. Keen*, 996 S.W.2d 842, 844 (Tenn. Crim. App. 1999). The guilty plea submission hearing transcript allows us to ascertain the facts and

circumstances surrounding the offense.  In the absence of a transcript of the guilty plea hearing, this Court must generally conclude that the sentence imposed by the trial court was correct.  *Id*. at 844.

Nonetheless, Defendant, Brenda Richardson and Christopher Walker Calvin testified at the sentencing hearing concerning the sequence of events that occurred on the day of the incident.  We therefore review this matter in light of the record before us.

Defendant testified that he was working at Leafguard as a general manager at the time of the offense.  On December 10, 2001,  he sent Mr. Calvin, one of the company's employees, to Knoxville around 10:00 a.m. to pick up supplies.  When Mr. Calvin had not reached the supplier by late afternoon, Defendant became concerned.  He unsuccessfully called area law enforcement officials to find out if Mr. Calvin had encountered difficulties on the trip.  Joshua Morgan, another employee, told Defendant around 6:30 or 7:00 p.m. that he wanted a drink.  Defendant told Mr. Morgan that he would buy whiskey if Mr. Morgan would go to the liquor store, but Mr. Morgan told Defendant that he did not have any identification.  Defendant then asked Ms. Richardson, another employee and also Defendant's girlfriend, to go to the liquor store and buy some whiskey and a couple of soft drinks for Mr. Morgan.  Defendant gave her some money for this purpose.

When Ms. Richardson returned with the liquor, Defendant told Mr. Morgan he could have a drink as long as he let Mr. Calvin drive him home.  Defendant said that he did not know how much Mr. Morgan drank, but admitted that he knew Mr. Morgan was intoxicated before he left work.

Mr. Calvin returned to the office around 8:30 p.m.  Defendant, Mr. Calvin and Mr. Morgan unloaded the supplies from the truck.  Defendant then called Ms. Richardson to pick him up because he had been drinking.  Defendant admitted that he gave the partially consumed bottle of whiskey to Mr. Morgan before he and Mr. Calvin left.  Defendant said that he made the two young men promise to go straight home.  Defendant said that he did not see Mr. Calvin and Mr. Morgan leave, and did not see Christopher Odom, Mr. Calvin's friend.

The following morning, Mickey Martin, Mr. Morgan's supervisor, called Defendant and told him that Mr. Morgan and Mr. Calvin had not reported for work that morning.  Mr. Martin had seen a report of an automobile accident on the television, and he told Defendant that the wheels of the wrecked car were similar to the wheels on Mr. Morgan's vehicle.  Mr. Martin later verified that the wrecked vehicle was Mr. Morgan's, and that Mr. Odom, a passenger in the car, had been killed.

Defendant initially testified that he assumed Mr. Morgan was twenty-one when he bought the liquor.  He later stated that he "figured" Mr. Morgan was underage when he said he did not have any identification.  Defendant admitted that he knew Mr. Calvin was nineteen.

Ms. Richardson said that she bought the whiskey for Defendant and Mr. Morgan, and then went home for the evening. She said that Defendant called her about 8:45 p.m to pick him up.  Ms. Richardson said that when she pulled into the office parking lot around 9:00 p.m. she saw someone standing next to the building.  Mr. Morgan and Mr. Calvin then drove past her, but she could not tell

who was driving. Mr. Morgan's car drove around the building instead of out on the street. Ms. Richardson said that she had not known how old Mr. Morgan was at the time of the incident.

Mr. Calvin said that he took his friend, Christopher Odom, with him to Knoxville. The two men returned to Nashville around 8:30 p.m. Mr. Calvin said that he knew Defendant and Mr. Morgan had been drinking whiskey and that Mr. Morgan was "pretty drunk." Mr. Odom hid while Mr. Calvin helped Mr. Morgan and Defendant unload the truck. Defendant told Mr. Calvin to drive. He and Mr. Morgan argued about who was going to drive, and Mr. Calvin let Mr. Morgan drive because it was his car. Mr. Calvin said Defendant was inside the office when they left.

James Douglas Sledge, an assistant district attorney, interviewed Defendant as part of the investigation into Mr. Morgan's wreck. Mr. Sledge said that Defendant told him that he was the one who drove to the liquor store to buy the whiskey. Mr. Sledge said that the bottle of whiskey found in the wreckage was approximately three-fourths full, and Mr. Morgan's blood alcohol level was .15 percent.

Defendant admitted that he told the preparer of the presentencing report that he had quit drinking after the incident. Defendant explained at the sentencing hearing that he meant that he did not drink at the same level as he did before the incident, and that he was trying to quit drinking. Defendant said that he had two glasses of wine three or four days before the sentencing hearing.

Christopher Odom's parents, Terry and Billie Odom, testified about the impact of their son's death on their family. In addition, the State presented numerous letters from family members and friends of Mr. Odum. Will Thorpe, Larry Cranfield, and Dale Allen Rivers testified in Defendant's behalf as to Defendant's character and standing in the community.

The trial court considered Defendant's prior conviction for DUI as an enhancement factor in determining the manner of service of Defendant's sentence. The trial court observed that Defendant had just completed probation for this alcohol-related offense when he committed the current offense. In addition, the trial court found that Defendant had violated a private trust because he was Mr. Morgan's employer, and the only adult of drinking age present that evening. The trial court stated that giving the underage men a partially filled bottle of whiskey before they got into Mr. Morgan's car "was basically [like] giving them a loaded gun." The trial court acknowledged that Defendant had been a productive member of society but declined to consider this factor in mitigation of Defendant's sentence based on Defendant's demonstrated lack of responsibility during the incident.

The trial court found that Defendant's lack of remorse over the incident evidenced by his demeanor during the hearing indicated that some form of personal deterrence was warranted. The trial court specifically found Defendant not credible in his testimony concerning whether or not he knew Mr. Morgan was underage and in his testimony about his drinking habits since the incident.

**II. Sentencing Issues**

Defendant was convicted of a Class A misdemeanor which carries a sentence not greater than eleven months, twenty-nine days. Tenn. Code Ann. §§ 39-15-404(b); 40-35-111(e)(1). Defendant does not appeal the length of his sentence but challenges the percentage of the sentence he must serve in confinement. Defendant argues that the trial court failed to properly consider the purposes and goals of the sentencing act when determining the percentage of his confinement. Defendant argues that he should have been granted full probation, or, in the alternative, a minimal period of confinement.

When a defendant challenges the length, range, or manner of service of a sentence, this Court conducts a *de novo* review with a presumption that the determinations made by the trial court are correct. *Id.* § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a *de novo* review of a sentence, this Court must consider (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; *State v. Smith*, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; *Ashby*, 823 S.W.2d at 169.

Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302, which provides, in part, that the trial court shall impose a specific sentence that is consistent with the purposes and principles of the 1989 Sentencing Reform Act. *See* Tenn. Code Ann. § 40-35-302(b). Although the Sentencing Reform Act typically treats misdemeanants and felons the same, misdemeanants are not given the presumption of a minimum sentence. *See State v. Seaton*, 914 S.W.2d 129, 133 (Tenn. Crim. App. 1995). A separate sentencing hearing is not required in misdemeanor sentencing, but the trial court must "allow the parties a reasonable opportunity to be heard on the question of the length of any sentence and the manner in which the sentence is to be served." Tenn. Code Ann. § 40-35-302(a). A misdemeanor sentence, unlike a felony sentence, has no sentence range. *State v. Baker*, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997).

The trial court is allowed greater flexibility in setting misdemeanor sentences than felony sentences. *State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999). The trial court, however, must impose a specific sentence for a misdemeanor conviction consistent with the purposes and principles of the 1989 Criminal Sentencing Reform Act. Tenn. Code Ann. § 40-35-302 (d); *State v. Palmer*, 902 S.W.2d 391, 394 (Tenn. 1995). The trial court should consider enhancement and mitigating factors in making its sentencing determinations; however, unlike the felony sentencing

statute, which requires the trial court to place its findings on the record, the misdemeanor sentencing statute "merely requires the trial judge to consider enhancement and mitigating factors when calculating the percentage of a misdemeanor sentence to be served in confinement." *State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998). The misdemeanor offender must be sentenced to an authorized determinate sentence with a percentage of not greater than seventy-five percent to be served by the defendant before he or she is eligible for rehabilitative programs. Tenn. Code Ann. §§ 40-35-302(b) and -302(d). When a defendant challenges a misdemeanor sentence, this Court conducts a *de novo* review with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d).

Although he cites no specific examples, Defendant contends that his sentence is unjustly disparate to sentences meted out to other offenders who provide alcohol to a minor but whose victims do not subsequently commit vehicular homicide. *See* Tenn. Code Ann. § 40-35-102(2). Defendant bases his argument on the trial court's observation that if the accident had not happened, "we would've never heard of Defendant; and his case would've been settled in General Sessions [Court] and Mr. Morgan, maybe, got picked up on a DUI, and they said, 'Where'd you get the alcohol?' and he says, 'Defendant,' and they cite him for that, and he gets probation or something." Defendant contends essentially that it was not his fault that Mr. Morgan wrecked his vehicle. Defendant argues that it was both foreseeable and probable that Mr. Morgan would have stopped anyway to purchase liquor on his way home.

We agree with Defendant's general premise that one of the acknowledged goals of the 1989 Sentencing Act is to encourage "the elimination of disparate sentences when appropriate." *State v. Carpenter*, 69 S.W.3d 568, 576 (Tenn. Crim. App. 2001). "When the provisions of [Tennessee Code Annotated sections 40-35-102 and 40-35-103] are read together, they clearly permit trial courts to exercise their discretion in determining the sentencing alternatives, or the length of the term of confinement, allowing differences in sentences justified by the nature of the crime, the characteristics and history of the criminal, and the circumstances surrounding the particular offense involved. *Id.* (citing *State v. Russell*, 773 S.W.2d 913, 915 (Tenn. 1989). Despite Defendant's speculation as to what Mr. Morgan might or might not have done that night, each sentence must be considered on its own merits and unique set of facts. *See State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987). "Although the purposes of sentencing are based on general principles, the Act can only be applied in an individual case to a particular person based upon the facts of that case and the circumstances of the defendant." *State v. Moss*, 727 S.W.2d 229, 235 (Tenn. 1986). Our review thus focuses not on whether Defendant's sentence is "fair," but whether the trial court followed the purposes and principles of the sentencing act in arriving at its sentencing determination for this particular offense. *Palmer*, 902 S.W.2d at 393-94.

A trial court may sentence a defendant to a period of confinement based on any one of the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1).

The trial court obviously based its conclusion that a period of confinement was warranted on the need to avoid depreciating the seriousness of the crime. Probation may be denied based solely upon the circumstances surrounding the offense. *State v. Hartley*, 818 S.W.2d 370, 374 (Tenn. Crim. App. 1991). To deny probation solely on these grounds, however, the offense "must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or an exaggerated degree." *Id.* Defendant argues that his offense does not rise to this level, and we agree. However, circumstances which do not rise to a level which justifies denial of alternative sentencing may nevertheless justify a denial of full probation. *State v. Bingham*, 910 S.W.2d 448, 455-56 (Tenn. Crim. App. 1995). In addition, a defendant's lack of credibility or his or her failure to acknowledge culpability may reflect on the potential for rehabilitation and support a finding that a period of confinement is necessary to avoid depreciating the seriousness of an offense. *State v. Gutierrez*, 5 S.W.3d 641, 647 (Tenn. 1999); *State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Cirm. App. 1997).

The trial court observed,

I do not think, even sitting here today, that Mr. Hostetter–you know, I've heard these witnesses talk about he's cried and he's broken down to them, at home in Indianapolis. But the only time--I've sat here and observed him now for three hours–is–the only time he's gotten choked up is when his defense attorney asked him about going to jail. . . .

So, you know, I do think I can consider not just this is furnishing some cups of Evan Williams to Mr. Morgan, but what eventually it led to, and do think that [Defendant] has, even here today, some issues with realizing the significance of that event, that occurred over this one and one-and-a-half [sic] period of time, that they're worried about Mr. Calvin and decide to start drinking.

I don't really understand [Defendant's] change in his position from–I mean, I thought I made myself pretty clear, when I was asking about he wasn't trying to tell the Court that he didn't think Joshua Morgan was less than twenty-one.

He made it clear that he was trying to give that impression to the Court, and then changes his opinion later–I don't know if it was because of what I said or not–but

changes his opinion and says, well, yeah, he did think that maybe he was under twenty-one.

Defendant argues that he did not lie to the trial court about whether or not he knew Mr. Morgan was under twenty-one because he did not know Mr. Morgan's true age. Defendant, however, misses the thrust of the trial court's concern over Defendant's credibility. During Defendant's direct examination, the trial court asked, "You're not [going to] try to say that you knew Mr. Morgan was twenty-one, are you?" Defendant replied, "Well, I assumed, by the conversation, that he was." Later, Defendant admitted that he did not think Mr. Morgan was twenty-one after he failed to produce any identification. The following exchange took place:

| THE COURT: | That's not what you told me earlier |
|---|---|
| DEFENDANT: | I understand. I guess, what I'm saying is I'm – to answer what you're saying, I did not know how old he was; that I did not know. But I figured he musta [sic] been under twenty-one. So, in my mind, yes, I guess I did know that; but I didn't know a specific age. |
| THE COURT: | Why are you changing your testimony? |
| DEFENDANT: | That's what I thought my attorney was telling – or asking me. |

Based upon our review of the record and the nature and circumstances of the offense, we conclude that the trial court acted within its discretionary authority in requiring Defendant to serve a part of his sentence in confinement.

In determining the percentage of his sentence to be served in confinement, the trial court found that Defendant had violated a position of trust not only because Defendant was Mr. Morgan's employer but also because Defendant was the only person of drinking age present during the evening. *See* Tenn. Code Ann. § 40-35-114(16). Defendant argues that although he was Mr. Morgan's employer, he barely knew him and his relationship with Mr. Morgan was not such that it promoted Mr. Morgan's confidence, credibility or faith. *See State v. Kissenger*, 922 S.W.2d 482 (Tenn. 1996).

Defendant was convicted of furnishing an intoxicating beverage to an individual under twenty-one years old. Tenn. Code Ann. § 39-15-404(2). The fact that Defendant was over twenty-one and Mr. Morgan underage, therefore, does not, standing alone, trigger application of enhancement factor (16). An enhancement factor by itself may not be an essential element of the charged offense. Tenn. Code Ann. § 40-35-114. *See also State v. Housewright*, 982 S.W.2d 354, 358 (Tenn. Crim. App. 1997) (citing *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995), *overruled on other grounds, State v. Hooper*, 29 S.W.3d 1, 22 (Tenn. 2000)(A trial court may not consider factors which constitute elements of the offense within its sentencing determinations.))

A supervisor/employee relationship, however, may establish a relationship of private trust. *See State v. Harris*, 866 S.W.2d 583, 588 (Tenn. Crim. App. 1992). In *Kissinger,* our Supreme Court explained that,

> [t]he determination of the existence of a position of trust does not depend on the length or formality of the relationship, but upon the nature of the relationship. Thus, the court should look to see whether the offender formally or informally stood in a relationship to the victim that promoted confidence, reliability, or faith.

*State v. Kissinger*, 922 S.W.2d 482, 488 (Tenn. 1996).

In the case *sub judice*, Mr. Morgan initiated the idea of drinking whiskey. It was Defendant, however, who then offered to buy the liquor for Mr. Morgan. It can be reasonably inferred that the reason Defendant supplied the alcoholic beverage for Mr. Morgan was for them to drink while they were delayed at work waiting for Mr. Calvin to return from Knoxville. Defendant said that he poured himself a drink. Mr. Morgan asked Defendant if he minded if Mr. Morgan made a drink, and Defendant replied, "yes, you can." Based on the circumstances presented, we cannot conclude that the trial court erred in considering enhancement factor (16) in its sentencing determinations.

The trial court also considered Defendant's prior conviction of DUI in determining the percentage of his sentence to be served in confinement. *See* Tenn. Code Ann. § 40-35-114(2). Although Defendant only has one prior criminal conviction, the trial court placed great weight on this factor because both offenses were alcohol-related, and Defendant had just finished his probationary period for the first offense when he committed the second. A prior criminal conviction is an appropriate factor to be considered in a trial court's sentencing determinations. *See Troutman*, 979 S.W.2d at 274.

Defendant also contends that the trial court implicitly, and erroneously, considered enhancement factor (17), the crime was committed under circumstances under which the potential for bodily injury to a victim was great. Tenn. Code Ann. § 40-35-114(17). The record, however, does not support Defendant's contention that this enhancement factor played a role in the trial court's sentencing determinations.

Although the trial court found no mitigating factors, Defendant contends that several factors are present. First, he argues that his conduct did not cause or threaten to cause serious bodily injury. *Id.* § 40-35-113(1). Defendant contends that providing alcohol to a person under twenty-one does not "create the threat of imminent bodily injury like firing a loaded weapon or committing assault with a blunt object." The trial court, in declining to consider this factor, observed not only that Defendant permitted Mr. Morgan to drink at work, but also the fact that after Mr. Morgan was intoxicated, Defendant gave Mr. Morgan and Mr. Calvin a partially full bottle of liquor as they were leaving the premises in Mr. Morgan's car. As the trial court observed, "So, [Defendant] just calls his girlfriend and goes about his way, thinking that a nineteen-year-old with a gallon of Evan Williams, with another nineteen-year-old, are going to honor their word to him and either not partake

of any of it while they're driving and not allow Mr. Morgan to drive." Although Defendant strenuously argues that he is not responsible for Mr. Odom's death, the circumstances underlying a particular offense may be considered in determining which enhancement or mitigating factors are present. We cannot conclude that the evidence preponderates against the trial court's finding that this mitigating factor is not applicable.

Defendant argues that substantial grounds exist to justify or excuse his conduct because Defendant took steps to prevent Mr. Morgan from driving. Tenn. Code Ann. § 40-35-113(3). Regardless of the sufficiency of Defendant's actions in this regard, his argument addresses his conduct after the commission of the offense. Under our statutory scheme, it is an offense to purchase alcohol for a person under twenty-one "for any purpose." The trial court did not err in declining to consider this mitigating factor.

Defendant argues that his cooperation with the investigating officers after the car accident should be considered in mitigation of his sentence. *Id*. § 40-35-113(9). There is no evidence in the record, however, that Defendant assisted the police in their investigation other than confirming the sequence of events leading up to Mr. Morgan's intoxication prior to the time of the accident.

Accordingly, we conclude that the trial court acted within his discretionary authority in requiring Defendant to serve fifty percent of his sentence in confinement.

We note that the State has argued on appeal that the United States Supreme Court's recent decision in *Blakely v. Washington*, 542 U.S. ___, 124 S. Ct. 2531 (2004) has no impact on a trial court's sentencing determinations involving misdemeanor convictions, and we agree.

The *Blakely* decision reemphasized a criminal defendant's Sixth Amendment right to have a jury determine the presence of all of the essential elements of the charged offense beyond a reasonable doubt, even if these factors are labeled by the State as sentencing enhancement factors." *Id.*, 124 S. Ct. 2538-39. The *Blakely* court clarified that the "statutory maximum" to which a trial court may sentence a defendant is not the maximum sentence after application of appropriate enhancement factors, other than the fact of a prior conviction, but the "maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Id.* at 2537 (emphasis in original). Under *Blakely*, then, unless the defendant has a prior conviction, the "statutory maximum" sentence which may be imposed is the presumptive sentence applicable to his or her offense. *Id.*

Unlike a defendant convicted of a felony, however, the legislature has not extended a statutory presumptive sentence to misdemeanants. Tenn. Code Ann. §§ 40-35-111, -210; *State v. Seaton*, 914 S.W.2d 129, 133 (Tenn. Crim. App. 1995). The presumptive sentence for a Class B, C, D, or E felony conviction is the minimum sentence in the range if there are no enhancement or mitigating factors present. Tenn. Code Ann. § 40-35-210(c). The presumptive sentence for a Class A felony is the mid-point of the range. *Id.* The sentencing scheme for misdemeanants, however, establishes only a maximum sentence which may be imposed for a particular class of misdemeanor.

*Id.* 40-35-111(e). Thus, a misdemeanor sentence, unlike a felony sentence, has no sentence range. *Baker*, 966 S.W.2d at 434.

The Sixth Amendment concerns expressed in *Blakely* are not implicated by our misdemeanor sentencing scheme. A trial court is merely required to consider statutory enhancement and mitigating factors in calculating the percentage of the misdemeanant's sentence to be served in confinement, not the length of his or her sentence. Tenn. Code Ann. § 40-35-302(d); *Troutman*, 979 S.W.2d at 274. As our supreme court has recently observed, several courts have rejected the contention that *Blakely* applies to a trial court's determination of the manner of service of a sentence. *State v. Robinson*, ___ S.W.3d ___, No. W2001-01299SCR11-DD, slip op. 26 n. 14 (Tenn. Sept. 28, 2004) (Considering *Blakely*'s application to a trial court's order of consecutive sentencing.)

## CONCLUSION

Based upon our review of the record, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE